304 So.2d 629

**Henry Lee HOPKINS**

v.

**STATE.**

**I Div. 472.**

Court of Criminal Appeals of Alabama.

Nov. 12, 1974.

Rehearing Denied Dec. 17, 1974.

Melvin W. Brunson, Mobile, for appellant.

HARRIS, Judge.

Hopkins was convicted of robbery and sentenced to life imprisonment. Prior to arraignment he was found to be indigent and counsel was appointed to represent him. He is in this Court with a free transcript and trial counsel was appointed to represent him on appeal.

On July 20, 1972, Mr. Edward C. Bexley was sitting on his porch at 2808 Shell Street in Mobile. A fourteen-year-old son was in the house watching television. The time was between 10:00 and 11:00 A.M. Two black men approached him and asked if he knew where some landscape work was going on in the area. Mr. Bexley told them some houses were under construction in the neighborhood and pointed in the direction of Mal Drive. One of the black men, subsequently identified as John Brown Agee, pulled a pistol and said, "Get in the house, this is a holdup." Mr. Bexley went to the room where his son was located and he was followed by the two men. They ordered the father and son to lie flat on the floor in front of the television with their arms outstretched and told them not to look at them. The men started pulling out all the drawers in the house.

William J. Baxley, Atty. Gen. and David W. Clark, Asst. Atty. Gen., for the State.

While rummaging through the house, these men kept asking Mr. Bexley how long his car was going to be gone. He told them his wife and another son had gone to the store to buy some soft drinks and other items and would be back in a

few minutes. They asked him if he had a gun in the house and Mr. Bexley said he had a 16 gauge single barrel shotgun in the back bedroom. They could not find the gun and ordered him to show them the gun. He got the gun for them and they asked him if he had another gun and he said he did not. The men then ordered the father and son to lie face down on the bed in the back bedroom and they complied with the order. One of the men looked under the bed and found a 22 caliber automatic rifle and said, "You lied to me. I ought to kill you." They kept asking how long the car was going to be gone and at this time Mrs. Bexley and her son drove in the driveway.

The gunmen wrapped the pistol in a towel, got Mr. Bexley off the bed and made him stand in the hallway next to the kitchen with the pistol pointed at his head. As Mrs. Bexley and her son entered the kitchen, the gunmen told Mr. Bexley to tell them that if they did what they were told to do no one would get hurt. He told his wife this was a holdup and to get all of her money and give it to them and no one would be hurt. She started to get the money from her pocketbook and Agee walked up behind her and took the pocketbook and removed all the money. All four members of the family were ordered to lie face down on the bed in the back and not look at the robbers. Mrs. Bexley got a good look at both gunmen while the pistol was pointed at her husband's head.

While the entire family was lying on one bed, the gunmen began taking things out of the house and putting them in Mr. Bexley's car. They took a host of items including the shotgun, rifle and a stereo. After loading the car the gunmen re-entered the house and got Mrs. Bexley and carried her into the front bedroom. Appellant pointed the pistol at her and told her to take her pants off and get on the bed. She hesitated and he told her to do what he told her to do or get killed. She removed her pants and got in bed and appellant raped her. After he finished he told her to go back to the other bedroom. She started walking back and was intercepted by Agee, who forced her back in the bedroom and he, too, raped her. Then she went to the bedroom where her family was still in bed and she laid down. The whole family was tied up except the youngest son. Mrs. Bexley's feet were tied together.

Appellant told them he was leaving in the car and would return in an hour. He told Agee to stay outside and guard the house. An argument ensued and Agee said he was not going to stay outside and then appellant told him to stay inside the house and watch them. He said if any of them moved to shoot one of them. He told Agee not to kill anyone but just shoot one of them. Agee did not like the idea of being left behind and after further argument, they left together.

Mrs. Bexley waited about five minutes to be sure the two men had gone and she untied her legs and then untied the others. The family went out the back door to a neighbor's house and called the police. Mrs. Bexley got someone to take her to her doctor. While she was at the doctor's office, two city detectives came to her home and interviewed her husband. He gave them a description of the two men. He told the officers that one man was six feet tall and the other was a little taller. Both men were in their early twenties and both were wearing dungarees and had on unlaced boots; one had on a faded blue shirt and the other had on an orange looking shirt or vest. One had on a little brown tam and had a gold tooth or gold crown. One had bushy hair and a little mustache. Both Mr. and Mrs. Bexley got a good look at these gunmen in broad daylight. The robbery and rape covered a period of approximately forty-five (45) minutes.

These crimes were committed on Thursday and the following Tuesday, Mr. Bexley's automobile was found and returned to him. He never saw his shotgun, rifle or stereo again.

In the next ten (10) days or two weeks, the Detectives brought numerous photographs to the Bexley home to see if they could identify these two men. After being shown different mug shots on several occasions, both Mr. and Mrs. Bexley identified Agee. A mug shot of appellant was not in the many photographs they viewed. Agee was arrested and a line-up was conducted. There were six black males in the line-up. The Bexleys identified Agee. In August, 1972, Agee pleaded guilty and was in the penitentiary at the time appellant was arrested on December 19, 1972, in the trailer home of his brother in Stockton, Baldwin County, Alabama.

On December 20, 1972, appellant was placed in a line-up with five other black men. This line-up was viewed separately by Mr. and Mrs. Bexley. Mr. Bexley was unable to make a positive identification but Mrs. Bexley had no difficulty in identifying the first of the two gunmen to rape her. She made a positive in-court identification of appellant.

Before appellant was interrogated, he was given the *Miranda* rights and warnings. He voluntarily, knowingly and intelligently waived his right to an attorney and signed the following form:

"STATE'S EXHIBIT 1

"WAIVER OF RIGHTS AND COUNSEL BY DEFENDANT IN CUSTODY

"I, Henry Lee Hopkins, have been informed by the undersigned law enforcement officers, prior to being questioned by them, that I am suspected of the offense of Robbery & Rape in Mobile County, Alabama, on the July 20, 1972 and have been informed by them of my rights as follows:

"1. That I may remain silent and do not have to make any statement at all.

"2. That any statement which I might make may and will be used against me in Court.

"3. That I have a right to consult with an attorney before making any statement and to have such attorney present with me while I am making a statement.

"4. That if I do not have enough money to employ an attorney, I have the right to have one appointed by the Court to represent me, to consult with him before making any statement, and to have him present with me while I am making a statement.

"5. That if I request an attorney, no questions will be asked me until an attorney is present to represent me.

"6. That at any time during the questioning I may request that the questioning be stopped, and it shall be stopped.

"After having my rights explained to me, I freely and voluntarily waive my right to an attorney. I am willing to make a statement to the officers. I can read and write the english language and fully understand my right to an attorney. I have read this waiver of counsel and fully understand it.

"No threats or promises have been made to me to induce me to sign this waiver of rights and counsel, and to make a statement to the officers on this 20 day of Dec. 1972.

"SIGNED: /s/ Henry L. Hopkins

"DATE: Dec. 20, 1972
DAY: Wednesday
Time: 9:30 A.M.

"WITNESSES:

"/s/ Sgt. Ralph L. Jordan
/s/ Sgt. J. Gill"

The above exhibit was admitted in evidence without objection. Appellant told the officers he would give them an oral statement but he would not sign one. The officer testified:

"Basically, he admitted being at the Bexley's residence with John Brown Agee

on the day of this offense and taking part in taking the merchandise that was taken. He stated that he did not, himself, participate in the rape of Mrs. Bexley and that he was there with John Brown Agee."

At trial appellant repudiated the statement he gave the officers and denied he was involved in the robbery and rape and that he had not seen Agee in about a year and that was while he was on escape from Atmore Prison. He pitched his whole defense on an alibi which the jury chose not to believe.

Appellant was indicted for robbery and rape in separate indictments. Prior to the instant trial for robbery he moved the court to consolidate both cases into one trial. The state objected and the court denied the motion and appellant claims this was error to reverse.

Robbery and rape are two separate and distinct offenses and are completely unrelated. However, the two offenses were so closely connected in point of time and place, all as part of one continuous transaction, that what occurred upon the commission of one would be admissible evidence as a part of the res gestae. The jury would have been entitled to the entire happenings in the trial and consideration of either offense. Had the state agreed to a consolidation, the court could well have instructed the jury as to both offense, and that they were to render a separate verdict in each case, and in the event of conviction, to fix the punishment. This procedure has been sanctioned in many cases in this state. Brown v. State, 236 Ala. 423, 183 So. 412; Brown v. State, 236 Ala. 426, 183 So. 414; Lipscomb v. State, 32 Ala. App. 623, 29 So.2d 145; Miller v. State, 291 Ala. 132, 279 So.2d 115.

In Jones v. State, 50 Ala.App. 62, 276 So.2d 647, appellant was convicted of robbery and given the death penalty, (modified and affirmed). Jones was also indicted, convicted and given the death penalty for rape growing out of the same transaction. This case was affirmed and modified by this Court one month later. Jones v. State, 50 Ala.App. 174, 277 So.2d 920. In the latter case the accused filed a motion to dismiss the rape indictment against him on the ground of former jeopardy alleging that he had previously been convicted of robbing the same victim. The motion was overruled and affirmed here.

It is the settled law in this state that a defendant cannot be put to trial on multiple indictments without his express agreement and consent, except in cases where he fails to object. By the same token, we know of no law that compels the state to agree to such consolidation at the whim and behest of an accused.

Finally, appellant claims reversible error was committed by the district attorney in cross-examining him as to *charges* of other crimes or robberies. On direct examination of appellant, his counsel asked him about his previous *arrest record* and not previous convictions of crimes involving moral turpitude. The district attorney was merely cross-examining him on matters brought out by his own counsel. The defense did not object to the questions posed on cross-examination until after the questions were answered and then moved for a mistrial. We find no error in this regard. Granting a mistrial is within the discretion of the trial court subject to review for clear abuse of discretion. Ala. Dig. Criminal Law, ⟜ 867, 1155.

We have carefully searched the record and have found no errors injuriously affecting the substantial rights of appellant and the case is due to be affirmed.

Affirmed.

All the Judges concur.