LEIGH M. CLARK, Retired Circuit Judge.
The prosecution in this case was based on an indictment charging defendant with murder in the first degree of Alfred Means, *293 by shooting him with a pistol. A jury found her guilty of manslaughter in the first degree and fixed her punishment at imprisonment for ten years. The court sentenced her accordingly.
Defendant was represented on the trial by employed counsel. Upon giving notice of an appeal, the court determined that she was indigent and appointed her trial counsel to represent her on appeal, which he has. faithfully done, raising all points, we believe, that can reasonably be presented in favor of appellant.
Our review of the evidence convinces us the evidence was sufficient to support the verdict. Even so, we will briefly state some of the salient facts that are conducive to a better understanding and a correct determination of the issues presented on appeal.
Appellant and deceased were living together in an apartment (also referred to as a house) in a housing project in Fort Deposit. The living together was without restriction or qualification, but each knew that the legal status of husband and wife, either by ceremony or by common law, did not exist, by reason of prior undissolved marriage, or marriages, of deceased. Defendant arranged for the apartment, but she and deceased had previously lived in an old house in Fort Deposit. Living in the same apartment or house with defendant and deceased were defendant’s brother and another man.
Between sunset and full night on a Saturday, April 23, 1977, a man by the name of William Crosskey came to the house where defendant and deceased lived, with a supply of beer and wine. A “heap of” people were there at the time. Some of them, including defendant, came outside when Crosskey arrived. Defendant and others went into the house with the beer. As Crosskey was about to leave, he made it known that he couldn’t find his car keys. A search was made for the keys. During that time an argument and threats of violence took place between defendant and Alfred Means. There was some evidence to the effect that he threatened to shoot her with a rifle in his possession and she threatened to protect herself with a shot gun in her possession. The particular quarrel subsided; Means went out of the back door with the rifle, and soon thereafter defendant went out of the house to see a neighbor.
The evidence does not show how long defendant was out of the house, but, by the time she returned, those in the house had made effective use of the beer and wine or other intoxicants. Defendant’s brother was drunk, or, as she expressed it, was “out of it.” Soon after returning, she learned that Means had returned, as she heard him fussing, cursing her and otherwise making a noise in their bedroom. She picked up a .22 caliber pistol that was lying in the lap of a guest and shouted to Means not to come out of the room, that she was going “to shoot down the hall.” She shot down the hall, and while she was shooting, Means came out of the room, and then returned to the room. He had been fatally wounded by one of the bullets. According to defendant, she did not know that a bullet had struck Means. Her testimony as to what took place immediately afterwards was as follows:
“A So, she told me, said Wyzonia, Uncle John is shot, and I dropped the pistol, I said I couldn’t have shot him. And, I couldn’t have shot him, and I run to the door, and he was behind the door. I said, Uncle John, are you shot? And, he said Yeah. So, I pushed him back and told him to come on, to let me carry him to the doctor, and me and him come out of the bedroom and went out the back door.
“Q Were you afraid of him?
“A Yeah.
“Q Had he beat you?
“A A lot of times.
“Q Had he threatened you that day?
“A That’s all he’d do all the time is threaten to kill me, put me under a big oak tree.
“Q What?
“A That’s all he’d do, threaten to kill me and put me under a big oak tree.
“Q Now, if you didn’t intend to shoot him, why were you shooting down that hall?
*294 “A Just to scare him, to keep him from coming out and beating me up.
“Q To keep him from coming back up there where you were?
“A Yeah.”
The first insistence by appellant that prejudicial error was committed is as to action of the court in denying a motion for a mistrial made by defendant during the testimony of S. L. McMeans, a witness for the State, as to a statement he said he had heard defendant make near her house on the morning of the fatal difficulty. The motion for a mistrial and its context were as follows:
“Q Tell the jury what she said?
“A She said she was going to kill that—
“Q Kill that what? Tell the jury what she said, Mr. McMeans.
“A Said she was going to kill that [SOB].
“Q What else did she say?
“A Said she was going to put some .22’s in his [rear end],
“Q Is that correct?
“A Yes, sir.
“Q Did you come back to the housing project later on that day?
“A Yes, about first dark.
“Q In the afternoon?
“A Yes, sir.
“Q And, when you came back, did you learn at that time whether or not Mr. Means had been killed?
“A I learned that he had been shot and he was on the critical list.
“BY MR. CHESTNUT: We object to that and ask that that be excluded and ask for a mistrial. That’s rank hearsay. “BY THE COURT: Your motion for a mistrial will be denied. Ladies and Gentlemen, you will disregard that statement by this witness.”
On cross-examination of the witness, counsel for defendant on the trial impressively developed the information from the witness that defendant had not stated the name or identity of the threatened victim. Furthermore, counsel for defendant showed that Means was not seen in the neighborhood at the time of the threatening words of defendant. By such cross-examination, defendant’s counsel greatly discounted the testimony of the witness purporting to show a threat by defendant to shoot and kill Means. However, during the cross-examination of defendant as a witness on the trial, she was asked about the testimony of S. L. McMeans as to what she had said the morning of the fatal difficulty, and she replied, “No, that’s not true.” She further said that she was not at the project that morning, and was not out where McMeans testified he saw her any time that afternoon.
In strongly urging that defendant was prejudiced by the testimony of McMeans that he had learned that Alfred Means “had been shot and he was on the critical list,” appellant says that such testimony “strongly implied that the deceased, Alfred Means, was the person the defendant was talking about earlier that morning when the said threat was allegedly made.” We do not question the apprehension of appellant’s counsel as to the testimony. We do not gainsay that there was no possibility that the jury inferred from the testimony excluded that Means was the target of the threats the witness testified the defendant made, but a careful analysis of the testimony excluded, and its context, shows that such an inference would have been unjustified and that there is no “implication” therein that Means was the person “defendant was talking about earlier that morning.” Appellant’s resourceful argument as to the “strong implication” in the testimony excluded, as viewed at the time the testimony was given, is greatly weakened by defendant’s subsequent testimony in denying that she had made any threats whatever against anybody.
Defendant was entitled to nothing more than she obtained by the rulings of the court in excluding the testimony and in denying the motion for a mistrial. The testimony, though hearsay and properly excluded, was not injurious to defendant, as it was merely cumulative of the undisputed evidence.
*295 We think the trial court was correct in overruling defendant’s motion for a mistrial. In addition, the denial of a motion for a mistrial is discretionary with the trial judge, and its exercise of that discretion will not be interferred with on appeal unless there has been a clear abuse of discretion. Shadle v. State, 280 Ala. 379, 194 So.2d 538 (1967); Edgeworth v. State, 54 Ala.App. 93, 304 So.2d 911 (1974); Hopkins v. State, 54 Ala.App. 75, 304 So.2d 629 (1974); Kelly v. State, Ala.Cr.App., 338 So.2d 1047 (1976); Impson v. State, Ala.Cr. App., 331 So.2d 837 (1976).
Another contention of appellant is that the trial court was in error in “failing to give sufficient charges to the jury on self-defense.”
In a clear and accurately stated oral charge, the court did not refer to the matter of self-defense. At the conclusion of the oral charge, the court inquired, “What do you say for the State?”, and the following occurred:
“BY MR. BRYAN: State is satisfied.
“BY THE COURT: What do you say for the Defendant?
“BY MR. CHESTNUT: May we approach the bench, Your Honor?
“BY THE COURT: I believe, Mr. Chestnut, that the law says that any objection must be made in the presence of the jury.
“BY MR. CHESTNUT: Well, I was going to suggest that you include in your charge itself that they should be charged as to defense of self-defense, her testimony was that she fired down the hall to keep him from coming out of that room—
“BY MR. BRYAN: We don’t believe there is any evidence of that, Judge.
“BY THE COURT: I don’t think there is any evidence of that.
“BY MR. CHESTNUT: May we have an exception?
“BY THE COURT: Yes, sir, you may have your exception.”
Immediately thereafter, the Court delivered forms of verdict, the indictment, and the exhibits to the jury, or the bailiff, and directed the bailiff to escort the jury to the jury room, and the jury retired to the jury room to deliberate.
There is nothing in the record to show that at any time prior to the completion of the court’s oral charge, the subject of “self-defense” was ever expressly mentioned. We do not have the benefit of the opening statements of counsel or their arguments to the jury. Appellant indicates in his brief that there was a written charge requested on the subject of self-defense. In doing so, reference is made to the following requested written charge:
“If the defendant fired the pistol out of the presence of the deceased with the intent to scare him and hoping to prevent an attack on her person you must find the defendant not guilty.”
The court was correct in refusing such charge. If, as indicated by appellant, the charge is in any way referable to self-defense, it is faulty in that it omits, and pretermits consideration of, some of the essential elements of self-defense, such as danger, or reasonable apprehension of danger of, imminent bodily harm. Aside from that and other defects, satisfaction of the hypothesis therein would not preclude a verdict finding defendant guilty of manslaughter in the second degree.
We construe the statement of counsel for the State, “We don’t believe there is any evidence of that, Judge,” as referable to the term “defense of self-defense” in the preceding statement of counsel for defendant. We construe the statement of the court, “I don’t think there is any evidence of that,” as referable to the same thing. Neither could hardly have been referable to the statement of counsel for defendant that “Her testimony was that she fired down that hall to keep him from coming out of that room,” as to which there was evidence.
The parties agree that, if there was no evidence of self-defense, the court should not have charged the jury on that subject. In our opinion, the question whether there was evidence of self-defense is close. If defendant had definitely asserted and continued to assert during the trial of the case the defense of self-defense, and had insisted *296 by correct written charges that the court charge the jury as to that defense, and it refused to do so, we are not sure that such action of the trial court would not have been erroneous. The record before us indicates that prior to the conclusion of the court’s oral charge, it was not made known to the court that there was any reliance whatever on a defense of self-defense.
 Where it is clear that defendant is interposing the defense of self-defense, either solely as a justification for an intentional homicide or in the alternative of a denial that he committed an intentional homicide, plenary instructions as to the principles of self-defense applicable to the circumstances of the particular case, are appropriately included in the oral charge, and such action by the court should be encouraged. Where, however, it is apparent, as in this case, that defendant is contending primarily that he (she) did not intentionally kill or intentionally injure another and there is basis for considerable doubt of the existence of evidence of self-defense, the court does not fail to measure up fully to its responsibility by its omission' from its oral charge any reference to self-defense. To include it under such circumstances would likely open a Pandora’s box.
Irrespective of the trial court’s conclusion that there was no evidence of self-defense, it cannot be placed in error for failing to charge the jury on the matter of self-defense in the absence of requests in writing setting forth correct principles of law on the subject. The circumstances of this case afford no reason for any exception to be made to the firmly established general principle that the only remedy available to a party aggrieved by the omission from the court’s oral charge of some pertinent principle of law is by written request in the form of a correct written charge, or correct written charges, that supply the omission. Code of Alabama 1975, § 12—16—13; East v. State, Ala.Cr.App., 339 So.2d 1104; Bowens v. State, 54 Ala.App. 491, 309 So.2d 844, cert. denied, 293 Ala. 746, 309 So.2d 850; Smith v. State, 53 Ala.App. 657, 303 So.2d 157; Gray v. State, 52 Ala.App. 481, 294 So.2d 448.
Appellant’s only other insistence on a reversal is directed to the refusal of written charges requested by defendant. Five written charges requested by defendant were refused. We have hereinabove discussed one of them. We now consider the remaining four. One of the charges refused is as follows:
“Without an intent to kill there can be no murder or manslaughter in the first degree.”
In the oral charge, the court said, inter alia, in comprehensive instructions as to the four degrees or kinds of unlawful homicide and their distinctive requirements, as follows:
“ . . . Without an intent to kill, there can be no murder or manslaughter in the first degree.”
The particular charge requested would have been a mere duplication of the quoted portion of the oral charge, and its refusal was not error.
Two of the refused charges preclude a guilty verdict upon a finding that the shooting of Means was “accidental” or resulted “from an accident.” Each charge ignores the principle that one can be adjudged guilty of manslaughter in the second degree even though he killed another accidentally. Williams v. State, 83 Ala. 16, 3 So. 616 (1889); Fulghum v. State, 291 Ala. 71, 277 So.2d 886 (1973); Reynolds v. State, Ala.Cr.App., 346 So.2d 979, cert. denied, Ala., 346 So.2d 986 (1977); Callahan v. State, Ala.Cr.App., 343 So.2d 551 (1977).
The remaining charge refused (“The defendant is not guilty if she did not fire the pistol negligently or had an intent to injure or kill the defendant.”) is misleading at least and is probably an inaccurate statement of what the writer intended. Our quotation of the charge itself may not be accurate, for the charge is in handwriting and the two-letter word before the word “intent” may be something other than the word “an.” Whether so or not, the use of the disjunctive “or” instead of the conjunctive “and” makes the charge misleading at least and makes the instruction subject to *297 the construction that defendant was entitled to an acquittal in the event of either an absence of negligence sufficient to constitute manslaughter in the second degree or absence of an intent sufficient to constitute murder or manslaughter in the first degree. Under the first hypothesis, she would not have been guilty of manslaughter in the second degree, but she could have been guilty of manslaughter in the first degree or murder in either degree. Under the second hypothesis she would not have been guilty of murder in either degree or of manslaughter in the first degree, but she could have been guilty of manslaughter in the second degree. Moreover, we note that the oral charge is comprehensive as to the four kinds of unlawful homicide, and all of the requirements as to each, and that the principle that was intended to be presented by the charge was fully covered in the oral charge. The court committed no error in refusing the charge.
We find no error in the record prejudicial to defendant, and the judgment appealed from should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.