DeCARLO, Judge.
Appellant was indicted, tried, convicted and sentenced to ten years imprisonment for bribery to commit a felony under § 13-5-39, Code of Alabama 1975, which provides the following:
“Any person who corruptly gives, offers or promises any gift, gratuity or thing of value to another person, with intent to induce or influence such person to commit any crime or offense punishable as a felony, shall, on conviction, be imprisoned in the penitentiary for not less than two nor more than 10 years.”
Omitting the formal parts, the indictment charged that:
“RICHARD WILSON WYERS, whose name is otherwise unknown to the Grand Jury, did corruptly give, offer or promise one Richard Giannetti a certain gift, gratuity or thing of value, to-wit: One Thousand Five Hundred Dollars of the lawful currency of the United States of America, with intent to induce or influence said Richard Giannetti, to commit a certain crime or offense punishable as a felony, to-wit: the offense of murder by unlawfully and with malice aforethought killing one Joyce M. Wyers.”
The State’s chief witness was Richard Giannetti. In 1977, appellant hired Gian-netti, a private detective in Birmingham, to investigate his wife and her alleged boyfriend in connection with a pending divorce case. Thereafter, on March 23, 1978, while appellant and Giannetti were having drinks at the California Club in Birmingham, appellant told Giannetti that he wanted to find someone to do bodily harm to his wife’s boyfriend. Appellant then said that he had changed his mind and would rather find somebody to kill his wife instead. He asked Giannetti if he knew of anyone who would do the job. The following day, when Gian-netti asked whether appellant was serious about having his wife killed, and appellant replied, “I was never more serious in my life,” Giannetti reported the incident to the Birmingham Police Department.
Thereafter, the police monitored the developments between appellant and Giannet-ti, and advised Giannetti to see how far appellant would go with his plans. Gian-netti was outfitted with a hidden microphone and transmitter, and his conversations with appellant were relayed to police recording unit. The tapes and transcripts of these conversations were later introduced into evidence at appellant’s trial.
Giannetti pretended to go along with appellant’s plan. He told appellant that he [Giannetti] had found a person to commit the murder for $3000. with $1500. down and $1500. to be paid after the job was done. It is undisputed that Giannetti was to receive no payment for his role as the intermediary.
On March 29, 1978, appellant handed over fifteen hundred dollars to Giannetti to deliver to the “hit man.” He also gave Gian-netti the number and combination for a post office box where the remainder of the money would be found after the murder was accomplished. Appellant was arrested outside the California Club after he had delivered the money to Giannetti.
At the close of the State’s case, appellant moved to exclude the evidence, arguing that there was a material variance between the indictment and the proof offered at trial. After a lengthy hearing, the trial *223 judge overruled the motion, and appellant presented no defense.
I
Appellant’s motion to exclude presents us with the question of the sufficiency of the evidence in this rather bizarre and unprecedented set of circumstances. We have been cited to no case, and our own research has uncovered no reported decision with similar facts.
Appellant argues that since Giannetti was to receive nothing for his role as middleman, and was to deliver the entire fifteen hundred dollars to the nonexistent killer, Giannetti could not have been the offer-ee of a bribe. In short, he insists that because the evidence showed Giannetti was a gratuitous intermediary, the State did not prove that appellant did “corruptly give, offer or promise . . . Richard Giannetti . . . $1500.”
We do not agree. In the absence of more direct and persuasive authority, we are inclined to follow the reasoning of the United States Court of Appeals in Malatkofski v. United States, 179 F.2d 905 (1st Cir. 1950). In Malatkofski v. United States, supra, the defendant was convicted of bribery under a federal statute substantially identical to § 13-5-39, supra, and punishing:
“[wjhosoever shall promise, offer, or give . . . any money or other thing of value ... to any person acting for or on behalf of the United States . . . with intent to influence his decision or action ...”
In answer to the defendant’s contention that he could not be convicted of “giving” money to a federal official because the payment was merely a loan, the court stated the following:
“The word ‘give’ in the statute is not, we think, used in the sense of ‘to bestow without a return’ or ‘to make a present of,’ but rather in another well-accepted sense of ‘to deliver or hand over.’ In the latter sense the evidence is undisputed that Malatkofski gave [i. e., handed over to] Cleary one thousand dollars in cash, and this is so whether the transaction was dressed up as an ostensible loan or as a ‘present.’ . . . There is good sense in this interpretation of the statute, for the legal effect of handing over the money to Cleary with the corrupt intent as established by the verdicts was the same whether it was understood as a gift or as a loan. If the latter was the understanding, Cleary nevertheless got title to the thousand dollars, and his promise to repay the ‘loan,’ as part of an illegal transaction, was wholly unenforceable.”
In the case before us, we find the evidence unquestionably clear that appellant “delivered” or “handed over to” Giannetti the fifteen hundred dollars for his wife’s murder. Following the rationale of the Ma-latkofski court, we also find that the legal effect of appellant’s handing the money to Giannetti was the same whether the transfer was characterized as a gift or as a delivery to a mere escrow agent or holding party for a third person. In either circumstance, it is clear that Giannetti’s promise to return the money if the “hit man” did not accomplish the murder would have been unenforceable.
Our construction of the word “give” as found in § 13-5-39, supra, that appellant “gave” Giannetti the money, within the meaning of the foregoing statute, is further supported by appellant’s own statements to Giannetti, taken from the tape transcripts:
“Wyers: Let me tell you something. I’m going to give you $3,000 . . .
“Giannetti: But here’s the thing. I can tell him that, I can go up to him and say look, the guy’s going to give us $3,000 the day before it’s done or the day it’s done. He’s going to say that’s not the way it works, Rich, and you know that. I’ve got to have something up front. I don’t care if it’s all of it or part of it.
“Wyers: I don’t care about that. That’s your problem.
“Giannetti: Thanks. I hadn’t got enough, huh.
“Wyers: I’m going to give you the money. I don’t want anything to do with him. I don’t know him.
*224 “Giannetti: I realize that. I know you were going to give him the money. I don’t think you’ll back out on the money.
“Wyers: You handle the whole money situation.
“Giannetti: All right, there’s no problem.
“Wyers: I’m not dealing with him. I’m dealing with you.
“Giannetti: Yeah, right. But I’ve still gotta say I’ve got it or I ain’t got it. But see, it don’t go to him anyway. It goes to me. None of it goes to him until after it’s completed. You know, you don’t pay for a job before something’s done but you do have to have a mutual holder.

“Giannetti: Okay, that’s not what I’m getting at. When you’re saying you're going to give me $3,000, what do you mean you’re going to give it to me.
“Wyers: Just exactly that.
“Giannetti: When?
“Wyers: Right now.
“Giannetti: Oh fine, no problem there. I don’t want to tell him that, though. See, I’m gonna tell him. . .
“Wyers: I don’t care.
“Giannetti: All right, okay.
“Wyers: You handle that.

“Wyers: As you were gone very briefly and momentarily...
“Giannetti: Yes sir.
“Wyers: I decided to go ahead and take $2500 dollars of that money back.
“Giannetti: You do want to take $2500 back, all right, I don’t care but it’s kind of foolish to me. What is the reason for that?
“Wyers: I don’t really know.
“Giannetti: Well, why take it back. Let me hold this and you hold that.
“Wyers: You hold that and I’ll hold this.
“Giannetti: What the hell is the difference whether you give him three thousand or five dollars, Rick? It’s kind of foolish. Seriously, I don’t understand that.
“Wyers: The guy’s only expecting five, right?
“Giannetti: No, he said, that’s what he said, well, if it’s gonna be done but he wanted the five that day, that day, that’s what he was talking about. He said the other half would have to be put up before.

“Wyers: Let me say this about that. All I was legally or technically obligated to do was to put. . .(inaudible).
“Giannetti: Right. No, 15, 15. You were legally obligated to 5 and as of that day he said get $500 from the guy and he wasn't settling for the 2500 the day before or nothing like that. That’s not what he said. He said get the 500 as a binder from the guy, and if he backs out, at least I’ve got 500 dollars. If you back out, this way if you gave him three and you back out Sunday morning, he might want the three. I don’t know, but he’ll ask for at least 500 for his time and his aggravation. He would have asked for 500, I’m sure, and then I would have given you back 2500. I’m sure of that. That’s the way I feel about it. I would never give him 3,000 dollars if you backed out and he said, well, you know, 3,000 dollars. I wouldn’t give it to him. I’d give him $500. That’s all there is to it. That’s the same thing he told me the other day. Just get $500 from the guy and if he backs out fine, but at least I’ve got $500.
“Wyers: Let me put it this way that being the case.
“Giannetti: And if you still back out, he’s gonna get 5 of this 15.
“Wyers: If I back out, he can have five and you can have the grand.
“Giannetti: That’s fine with me. I’d love that. If you back out. All right?
“Wyers: All right.
“Giannetti: Because if it goes through, I don’t get nothing anyway. All I’ve got is what you gave me before and that’s it. That’s the way I’m going and that’s the way this is set up. He either gets the whole thing or he gets five big ones, and that’s it. If you back out, then you get (inaudible).
*225 “Wyers: How do you want to handle this little problem?
“Giannetti: That’s what I said. You’re going to have to make contact now because afterward he’s gonna want his money. So we’re going to have to make some kind of contact later.
“Wyers: You handle that.
“Giannetti: (inaudible) say when. What I thought, this was working perfect the way we had it set. Look, I don’t give a damn really, but here’s the thing. Once this was in my hands. Right?
“Wyers: Right.
“Giannetti: All right. There was no more contact after that between you him or I. The only time I was to contact him was to give him the money. That’s the only time I had to see him again. In other words, Rick, bring me the money and we’ve got to contact him again. Do you see what I mean? Now this way I’ve gotta contact you. I have to go through this thing again and we’re going to have to contact him and say come get your money and all that crap. This way here I would have give it to him when the job was done and he’d have the whole thing.
“Wyers: Sunday night.
“Giannetti: We don’t even want to have conversation Sunday night. We don’t even want to contact each other Sunday night.
“Wyers: That’s what I was going to say.
“Giannetti: You’re forgetting this is taking place Sunday morning.
“Wyers: That’s what I was going to say.

“Giannetti: I thought I was wrong too. I saw him walking around with a pad. But anyway the only thing that would accomplish that there would be no more contact. That’s the only thing it saves. This one here. Now if you want to give him the whole thing before, all right, Saturday night or seven o’clock in the morning, either way. What the hell is that?
“Wyers: Post Office Box 9023.
“Giannetti: 9023.
“Wyers: This is the post office box. The combination is U1-B3.
“Giannetti: Okay.
“Wyers: Sunday there will be an envelope in it with $1500 cash.” [Emphasis added.]
From the foregoing, it is evident that once appellant delivered or “gave” the money to “Giannetti, he did not intend to trace its path or question its dispersal. It is our judgment, therefore, that appellant gave Giannetti fifteen hundred dollars to induce Giannetti to commit the offense of murder within the meaning of § 13-5-39, supra.
II
Appellant next insists that the trial court erred in failing to charge the jury on the elements of the offense.
It is well-settled that if an oral charge is not as comprehensive as a party would like, then the party must supply the court’s supposed omission by tendering a written requested charge. Hall v. State, Ala.Cr.App., 375 So.2d 536 (1979); Lewis v. State, Ala.Cr.App., 372 So.2d 882, cert. den. 372 So.2d 885 (Ala.1979); Thigpen v. State, Ala.Cr.App., 369 So.2d 291, cert. den. 369 So.2d 297 (Ala.1979); Wilder v. State, 52 Ala.App. 157, 290 So.2d 225 (1974). In the instant case, appellant requested the following written charges numbered 3, 6, and 10, as well as an unnumbered instruction called “Suggested Charge on Element.”
“I charge you that if Richard Giannetti received one Thousand Five hundred Dollars as the agent for a third person, you must find the defendant not guilty. . .
“Defendant # 3.
“Defendant # 6.
“I charge you that unless you find from the evidence beyond a reasonable doubt and to a moral certainty that Richard Giannetti received all or part of one thousand five hundred dollars for himself and not as the agent of some other person, you must find the defendant not guilty.

“Defendant # 10.
*226 “I charge you that unless you find beyond a reasonable doubt and to a moral certainty that the defendant gave, offered, or promised to Richard Giannetti One Thousand Five Hundred Dollars, for his own benefit you cannot find the guilty.

“Suggested Charge on Element.

“I charge you that the gist of this offense is the giving, offering or promising of a gift, gratuity or thing of value to the person to be bribed. The state has charged that Richard Giannetti was the person to be bribed in this case. If you have a reasonable doubt as to whether the defendant gave, offered or promised any gift, gratuity or thing of value to one Richard Giannetti, then you must find the defendant not guilty.”
Appellant’s “Suggested Charge on Element” and requested Charge No. 3, were properly refused because they were not hypothesized on a “belief from the evidence.” Thompson v. State, Ala.Cr.App., 367 So.2d 50, cert. den. 369 So.2d 52 (1979).
Appellant’s written requested charge No. 10 was properly refused because the omission of the word “defendant” rendered it elliptical and grammatically incorrect. Bryan v. State, 18 Ala.App. 199, 89 So. 894 (1921); Moore v. State, 146 Ala. 687, 40 So. 345 (1906); McCurley v. State, 39 So. 1022 (1905).
Finally, appellant’s written charge No. 6 was correctly refused because, as we have set out in Part I of this opinion, the fact that appellant delivered or handed over the money to Giannetti brings the transfer within the offense prohibited in § 13-5-39. Thus, it is unnecessary to determine whether Giannetti received the money as the “agent of some other person.”
We have examined the record and transcript of evidence and find no error prejudicial to appellant. The judgment of conviction by the Jefferson Circuit Court is due to be affirmed.
AFFIRMED.
HARRIS, P. J., and TYSON and BOWEN, JJ., concur.
BOOKOUT, J., concurs in result.