97 So.2d 802

Samuel **TAYLOR**

v.

**The STATE of Alabama.**

6 Div. 38.

Supreme Court of Alabama.

June 27, 1957.

Rehearing Denied Nov. 14, 1957.

Marcus Jones and Morel Montgomery, Birmingham, for appellant.

John Patterson, Atty. Gen., and Geo. Young, Asst. Atty. Gen., for the State.

**GOODWYN, Justice.**

Samuel Taylor, alias "Iron Man", was convicted of rape and sentenced to death by electrocution. His appeal is here pursuant to the statute providing for automatic appeals in death cases. Act No. 249, appvd. June 24, 1943, Gen.Acts 1943, p. 217, Code 1940, Tit. 15, § 382(1) et seq., Pocket Part.

The evidence tended to show the following: At a little past midnight on Saturday morning the prosecuting witness and her date drove out to a secluded spot off the Tarrant-Huffman Highway, in Jefferson County, and parked. It was a bright moonlight night. While the couple sat in the parked car listening to the radio, the girl noticed a Negro man (later identified as Thomas Black) outside the window, motioning her to unlock the door. Before the girl's companion was able to get the car started, the Negro broke the window and unlocked the door from the inside. The couple tried to escape through the opposite door, but were met there by two other Negroes. These two Negroes were later identified as the defendant, Taylor, and Mark Spruce. Black came around the car, caught hold of the prosecutrix and forced her to the ground near the rear of the car and raped her while the defendant and Spruce held her escort near the front of the car. Then the defendant raped her, while Spruce and Black held her escort. After the defendant had finished, all three ran away.

The commission of the crime in this manner was admitted by defendant in voluntary statements made by him to police officers after his arrest and corroborated by the testimony of the prosecuting witness, her escort, and a Negro named William Welch. Welch testified that he had heard the defendant and one of his companions planning, on Wednesday before the rape took place, to go hunting some "white stuff" on the following Friday night. He further testified that he had watched the whole affair from a distance of 15 or 20 feet, and identified the defendant as one of the participants.

The state presented other witnesses including the doctor who examined the prosecuting witness immediately after the alleged rape and several police officers to whom defendant made statements concerning his participation in the offense. A proper predicate was laid for the introduction of these statements, the evidence clearly showing that they were made voluntarily and free from any force, coercion or other improper influence.

The jury returned a verdict finding the defendant guilty as charged and fixing his punishment at death. This sentence was duly imposed by the court.

Defendant's motion for a new trial, based principally on newly discovered evidence, was overruled.

The main insistence here is that the trial court erred in refusing to grant the motion for a new trial. The newly discovered evidence presented in support of the motion consisted of Welch's repudiation of his testimony given at the trial. It appears that Welch was a witness for the state in the trial of Thomas Black which was held two or three weeks subsequent to the trial of this defendant. On direct examination his testimony was essentially the same as in the Taylor case. However, on cross-examination he repudiated all of his previous testimony given on direct examination. The evidence adduced at the hearing on the motion for new trial is conflict-

ing as to why Welch repudiated his previous testimony. The defendant sought to show that Welch's testimony implicating the defendant was untrue and forced from him by the coercion of law enforcement officers. The state's evidence tended to show that *his initial version of the facts was true*, and that Welch repudiated his testimony because of outside pressure and sympathy for Black—he did not want to see Black die in the electric chair like Taylor was going to do. The jury in the Black case returned a verdict fixing punishment at 10 years' imprisonment. The same judge presided in both cases.

At the conclusion of the hearing on the motion for new trial the trial judge, in announcing his decision overruling the motion, made the following observations, viz.:

"I heard his (Welch's) testimony in the Samuel Taylor case, and I was convinced then, as I am convinced now, that he was telling the truth in the hearing at that time. I have no doubt as·to whether he was overreached in some manner. I have ideas, but I don't know—I don't know. But I have no doubt but what he was reached in some manner and caused to change his testimony.

"As to the testimony being overwhelming, or prepondering testimony in favor of a motion for a new trial, I don't agree. Certainly no preponderance of testimony has been given. * * * (The prosecutrix and her escort) testified exactly the same in the Thomas Black case as they did in the Samuel Taylor case. Of course, Samuel Taylor did not testify in the Thomas Black case, but his confession stands. So does the Thomas Black confession stand, and you take the Thomas Black confession along with the testimony of the prosecuting witness and her behavior—I will say two prosecuting witnesses—it was overwhelming and a preponderance of testimony.

"I have no doubt that the verdict would have been the same in the Taylor case had William Welch not testified.

\*  \*  \*  \*  \*  \*

"You take, in the Spruce case, you recall that the jury—that Mr. Deason tried that case without the testimony of William Welch, and the result there was ninety-nine years punishment—which goes to.show. \* \* \*"

■ To establish his right to a new trial on the ground of newly discovered evidence the defendant must meet the following requirements: (1) That the evidence is such as will probably change the result if a new trial is granted; (2) that it has been discovered since the trial; (3) that it could not have been discovered before the trial by the exercise of due diligence; (4) that it is material to the issue; and (5) that it is not merely cumulative or impeaching. Washington v. State, 259 Ala. 104, 107, 65 So.2d 704; O'Pryor v. State, 237 Ala. 13, 185 So. 374; Hodge v. State, 32 Ala.App. 283, 286, 26 So.2d 274, certiorari denied 248 Ala. 73, 26 So.2d 278; Folmar v. State, 22 Ala.App. 317, 116 So. 110, certiorari denied 217 Ala. 410, 116 So. 112; 39 Am. Jur., New Trial, § 158, p. 165.

■ The only evidence adduced by the defendant in support of his motion for a new trial was that the state's witness, Welch, had repudiated his testimony given at the original trial. It is abundantly clear from an examination of the record that Welch's testimony was cumulative and that there was ample evidence to support the conviction without considering his testimony. This is conceded in appellant's brief, but it is argued that without the influence of Welch's testimony the result of the trial would have been different in that the punishment fixed by the jury would have been less severe. On its face, the evidence in support of the motion merely tends to impeach one of the state's witnesses whose testimony was not essential to support the verdict of the jury. Even

if it should be conceded that Welch's testimony was false, we cannot say with any degree of certainty that the absence of such testimony on another trial would probably change the result. This is the conclusion reached by the trial judge and we find no basis for disturbing it. The granting or the refusal of a motion for new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial court and will not be revised on appeal unless it clearly appears that that discretion has been abused. Washington v. State, 259 Ala. 104, 108, 65 So.2d 704, supra; Maund v. State, 254 Ala. 452, 462, 48 So.2d 553; Slaughter v. State, 237 Ala. 26, 27, 185 So. 373; Aaron v. State, 181 Ala. 1, 3, 61 So. 812; 23 C.J.S. Criminal Law § 1453, pp. 1224–1227. We cannot say that there has been an abuse of discretion in this case.

As bearing on the question before us, we quote the following from an annotation in 158 A.L.R. 1062–1063:

"A study of the cases in the original annotations [33 A.L.R. 550 and 74 A.L.R. 757] and those decided subsequently indicates that the courts, with their experience with witnesses, generally pay but little regard to the statements of a recanting witness, and only in extraordinary and unusual cases will a new trial be allowed because of the recanting statements.

\* \* \* \* \* \*

"Cases decided subsequently to the original annotations support the statement therein made to the effect that as a general rule the court will not grant a new trial on statements made by a witness after a criminal trial tending to show that his testimony was perjured, whether the witness himself makes oath to the statement or not."

■ We have carefully considered all of the testimony, even though no lawful objection or exception was made thereto, as is required of us, and we do not find any testimony that was seriously prejudicial to the rights of the appellant; nor can we say, upon consideration of all the testimony, that the verdict is so decidedly contrary to the great weight of the evidence as to be wrong and unjust, which would call for an order reversing the judgment and granting a new trial. Code 1940, Tit. 15, § 382(10), Pocket Part, Act No. 249, appvd. June 24, 1943, Gen.Acts 1943, p. 219, § 10, supra. The verdict is amply supported by the evidence.

No error to reverse appearing, the judgment is due to be, and is, affirmed.

Affirmed.

All the Justices concur.