277 So.2d 413

**Shirley SNIPES, alias**

v.

**STATE.**

**5 Div. 91.**

Court of Criminal Appeals of Alabama.

April 3, 1973.

Rehearing Denied May 1, 1973.

**140**

James T. Gullage, Opelika, for appellant.

William J. Baxley, Atty. Gen., and George R. Stuart, Special Asst. Atty. Gen., Birmingham, for the State.

HARRIS, Judge.

Appellant was tried and convicted in the Circuit Court of Lee County for the offense denounced by Title 14, Section 214, Code of Alabama 1940, and was sentenced to four (4) years imprisonment in the penitentiary. This section is as follows:

"Any person who, by falsely personating another, and with the intent to injure or defraud, obtains or receives any property intended to be delivered to the individual personated, shall, on conviction, be punished as if he had stolen it."

According to the state's evidence, appellant went to Easterwood Shoes, a store located in the Midway Shopping Center, in Opelika, Alabama, to purchase a pair of shoes and a handbag to match a particular dress or garment which she carried with her. She went to Mrs. Barbara Foster, an employee of the store who had known appellant for about six years and sought her help in making the selection. Mrs. Foster found exactly the shoes and bag that appellant was seeking. The shoes were priced at $24.00 and the handbag at $15.00. Mrs. Foster knew that appellant had married but she did not know her married name. In making these purchases, appel-

lant gave Mrs. Foster a Bank Americard, which had been issued to Melvin Chatman. Mrs. Foster assumed her customer was Mrs. Chatman. The necessary sales ticket was made out and appellant signed her name thereto, viz. Mrs. Melvin Chatman and left the store with her purchases. Mrs. Foster further testified that two weeks prior to this transaction, appellant was in the store and purchased a pair of shoes using the very same Bank Americard, signing her name as "Mrs. Melvin Chatman". Mrs. Foster said she had no reason to doubt that appellant was Mrs. Chatman. The sales slip dated 10/39/70 was introduced in evidence as well as the sales slip dated 10/14/70, all over appellant's objections.

The Chatman's lived in the same trailer park where appellant and her husband resided. There was one common mail box for all residents of the park. In June of 1970, the Chatmans moved to Brookside in Jefferson County and Mrs. Chatman testified that she had not visited Opelika since they moved and was certainly not in the Easterwood Shoe Store in October, 1970, when the shoes and bag were purchased with her husband's Bank Americard; that as a matter of fact she had never used the Bank Americard to do any shopping in Easterwood Shoe Store; that in November, 1970, they received bills showing the purchase of shoes and handbag with the name "Mrs. Melvin Chatman" signed to the card. She immediately knew that this was not her signature and also that she did not make these purchases. She and her husband reported these facts to the Bank Americard service and she was not required to pay these bills. She further testified that she had not authorized appellant or anyone else to use this credit card.

Appellant testifying in her behalf said she went to the Easterwood Shoe Store to buy a pair of shoes and a handbag in September, 1970, and paid cash for these items. She said she did not go to this store at all in October, 1970. She denied that she carried a dress with her to have it matched with the shoes and handbag. She denied that she used a Bank Americard to make these purchases, and that the name "Mrs. Melvin Chatman" on the sales slip was not her handwriting.

■ Appellant contends that the trial court committed reversible error in allowing testimony that appellant had used the same Bank Americard credit card in the same store, signing the same name, "Mrs. Melvin Chatman", two weeks prior to the occasion made the basis of the indictment on the ground that evidence of distinct and independent offenses are not admissible in the trial of a person accused of a particular crime. This is the general rule. However, there are well recognized exceptions to this rule and one of paramount importance is the "identity exception".

These recognized exceptions to the general rule have developed into general categories and are listed in Wharton's Criminal Evidence, Section 31, as follows:

"These exceptions fall under the following general divisions: (1) Relevancy as part of res gestae. (2) *Relevancy to prove identity of person or of crime.* (3) Relevancy to prove scienter, or guilty knowledge. (4) *Relevancy to prove intent.* (5) Relevancy to show motive. (6) Relevancy to prove system. (7) Relevancy to prove malice. (8) Relevancy to rebut special defenses. (9) Relevancy in various particular crimes. It is recognized that in many instances the line of demarcation is not clear, but the discretion vested in the trial judge, intelligently and considerately exercised, will enable the prosecution fully to present the charge, on the one hand, and, on the other hand, to protect the accused and secure to him the rights guaranteed to him by the Constitution and the laws." (emphasis added)

From Wilkins v. State, 29 Ala.App. 349, 197 So. 75, we take the following as expositive of the very issue here involved:

"* * * It is a well-established common-law rule that in a criminal prosecu-

tion proof which shows or tends to show that the accused is guilty of the commission of other crimes or offenses at other times, even though of the same nature as the one charged in the indictment, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged unless the other offenses are connected with the offense for which he is on trial. In other words, proof of such collateral offenses cannot be used as substantive evidence to establish the guilt of the accused as to the crime charged. 20 Am.Jur., Section 309, pp. 287, 288. Wharton's Criminal Evidence, 10th Ed., Volume 1, Section 30, p. 59. This well-established principle of criminal evidence, however, is subject to several, equally well-established exceptions, which include cases where intent or identity is involved. As found in 22 R. C.L., Section 39, p. 1204: 'But this general rule is not to be followed blindly and evidence rejected on the sole ground that it does show the commission of another crime. If evidence is relevant and competent it should be admitted regardless of its incidental effect. Accordingly it is held that evidence of another crime is admissible where it tends to identify the accused.'

"And we also add that such evidence should also be admitted where it tends to show the intent with which the act was done. Or as stated in Underhill's Criminal Evidence, 4th Ed., Section 181, p. 318: 'To this general rule there are several distinct exceptions which have been permitted *from absolute necessity, to aid in the detection and punishment of crime.* These exceptions ought to be carefully limited and guarded by the courts and their number should not be increased. But it must be admitted that the *modern* tendency on the part of the courts is to *be liberal* in the admission of evidence of collateral crimes. The exceptions to the general rule arise either from the necessity of the case or the nature of the offense, as for example,

* * * when the *intent* or motive is to be proved from the circumstances, or where the *identity* of the accused is expressly in issue.'" (emphasis added)

These exceptions to the general rule have become so embedded in the judicial fabric of this State that further citation of authorities would be redundant. But for a collection of these authorities, see Weatherspoon v. State, 36 Ala.App. 392, 56 So.2d 793.

At the close of the state's case in chief, appellant made a motion to exclude as follows:

"MR. GULLAGE: Your Honor, the defendant moves to exclude the evidence of the State on the grounds that they have failed to prove what they have alleged in the indictment, that is, the indictment charges her with having received a bag and purse intended to have been delivered to the said Mrs. Melvin Chatman. And the evidence clearly indicates they intended to deliver it to this woman, and according to her, she is the one that got it and therefore, the State has failed to prove the case.

"THE COURT: Respectfully overruled.

"MR. GULLAGE: All right.

"THE COURT: Let the jury come in."

■    The testimony as to the signature on the sales card was in sharp conflict. Mrs. Foster testified that she had known Shirley Snipes for five or six years and that she had been a frequent customer of Easterwood Shoe Store over a period of several years; that on the occasion the shoes and handbag were purchased, appellant handed her a Bank Americard that bore the name "Melvin Chatman", and was printed on the card. Mrs. Foster filled out the required number of sale cards—original and two duplicates, dated 10/29/70, and presented same to appellant who immediately signed the name "Mrs. Melvin Chatman" thereon. On the other hand, appellant denied that she was in this store on

10/29/70, and denied that she ever used a Bank Americard to make this or any other purchase, and denied that she signed the alleged sales cards using the name "Mrs. Melvin Chatman". She admitted that she bought a pair of shoes and a handbag from this store but these purchases were made the latter part of September, 1970, and was a cash transaction.

In this posture of the case, the question of the "identity" of the accused was a foremost and utmost consideration and made relevant, material, competent and admissible the testimony of Mrs. Foster relating to the first occasion that appellant used the same Bank Americard to purchase a pair of shoes on October 14, 1970, from Easterwood Shoe Store and signed the sales card in the same name that she signed on October 29, 1970, viz. "Mrs. Melvin Chatman". This brings this case squarely within the purview of the authorities cited above which are controlling here.

Appellant makes a rather ingenious argument to the effect that the state did not prove she was guilty of false personation as charged in the indictment for the reason that if she misrepresented anything it was her marital status rather than of being another person and such misrepresentation would not constitute the offense described in Section 214, Title 14, Code of Alabama 1940. Appellant contends that the property was delivered to the person to whom it was intended to be delivered and the defendant did not pretend to be anyone other than herself. We fail to grasp the rational of this reasoning. While Mrs. Foster had known appellant for years, she did not know her married name. When appellant presented the Bank Americard in payment of the shoes and handbag bearing the name "Melvin Chatman" and signed the sales card "Mrs. Melvin Chatman", she was then and there representing to Mrs. Foster that she was indeed Mrs. Melvin Chatman the same as if she had said, "I am Shirley Chatman and my husband is Melvin Chatman".

The conflicting evidence made and presented a question for the jury's determination and the issue was resolved against appellant. The truthfulness or falsity of conflicting evidence is not within the province of this Court to pass judgment. Fagan v. State, 35 Ala.App. 13, 44 So.2d 634.

The indictment followed the approved form, Section 259, Title 15, Code of Alabama 1940, form 59, and alleged all the facts necessary to constitute the crime with which appellant was charged. The case of Teal v. State, 43 Ala.App. 584, 196 So.2d 729 is supportive of the conclusion here reached.

We have searched the record for error affecting the substantial rights of appellant. We have found none and the case is due to be affirmed and it is so ordered.

Affirmed.

All the Judges concur.