Appellant killed his wife by shooting her with a pistol. This occurred about breakfast *Page 1105 
time, during the second episode of a heated argument between them as to where, and with whom, she had been during the forepart of the night before, after she had left their home with one of their sons purportedly to act as a sitter for an invalid, and defendant had left the home to go to a dance with their daughter and their other son and his wife. Upon their return after midnight, the argument commenced. Defendant had been drinking, and he testified that he smelled alcohol on his wife's breath but that neither of them was drunk. Soon after waking up the next morning, the argument was resumed while they were in the kitchen. It was overheard by other members of the family. He accused her of infidelity and particularly with having been out with another man the night before. She told him in effect that where she had been was not any of his business and declined to tell him where she had been. One shot from the pistol in the hand of defendant fatally injured her by severing an artery in her neck. A second shot from the pistol struck the older son of the couple as he entered the kitchen and attempted to get between his father and mother. The younger son of the couple, who had been awakened by a shot, saw his father come from the kitchen and ran and tackled him and took the pistol from him. During the scuffle between them the pistol was fired three times.
Defendant was found guilty of murder in the first degree and sentenced to life imprisonment. He had pleaded not guilty and not guilty by reason of insanity.
There was substantial evidence in support of defendant's plea of insanity. On the other hand, there was ample evidence in support of the implied finding of the jury to the effect that he was not insane. The children of defendant and the victim seemed fully convinced, according to their testimony, that he was mentally incompetent and was not criminally responsible for the death of his wife. Furthermore, they testified unstintingly to his innate goodness, his industriousness, his kindness of disposition and his love for his family. He had enjoyed a good general reputation and a good reputation for peace and quiet, according to the testimony of several credible witnesses.
The main contention of able counsel for appellant, the same counsel that represented him on the trial, is that the act of the defendant in killing his wife was in a heat of passion that suspended his judgment and dominated his will, and that he could not have been guilty of murder in either degree. In Smithv. State, 83 Ala. 26, 3 So. 551 (1887), the rule is stated, which in general has been followed since, as follows:
 "Whether or not the homicide is the offspring of malice, is the characteristic, which distinguishes murder and manslaughter. In consideration of the infirmities of humanity, the law regards a sudden transport of passion, caused by adequate provocation, as sufficient to rebut the imputation of malice which would otherwise arise. . . . The state of mind must be such, that the suddenly excited passion suspends the exercise of judgment, and dominates volition, so as to exclude premeditation and a previous formed design, though of short duration; but it is not essential that the transport of passion shall be so overpowering as to destroy volition, or the reasoning faculty. . . ."
Five charges requested in writing by defendant were given that set forth in various ways the principle as to a killing in sudden passion relied upon by appellant. Some of these charges were even more favorable to defendant than the established principle itself.
Counsel for appellant make an eloquent plea that the principle set forth above, as applied to the facts of this case, precludes as a matter of law a conviction for murder, especially murder in the first degree. Nevertheless, we are convinced that defendant was entitled to no more than a submission of the particular issue to the jury. Its determination thereof adverse to defendant was supported by ample evidence, and it is not within our province to overrule such determination. *Page 1106 
During the deliberations of the jury, the following occurred:
 "(Whereupon, at approximately six forty p.m., the Jury was seated in the jury box, and the following proceedings were had):
 "A JUROR: Judge, we would like for your charges to be re-read to the Jurors what constitutes first-degree murder, second-degree murder, first-degree manslaughter, and second-degree manslaughter."
Immediately thereafter the court proceeded to recharge the jury as to the two degrees of murder and the two degrees of manslaughter, which was substantially the same, though not identical with, the court's oral charge on the subject. Immediately thereafter, the following occurred:
 "THE COURT: Is there any further part of my charge that you would like for me to read to you?
"A JUROR: I don't think so.
"THE COURT: Please go back to the jury room.
"MR. CARNES: Do we have the right to make exceptions?
 "THE COURT: Yes. (To the Jury) Just a moment. You all come back just a second.
 "(Whereupon, the District Attorney and the attorney for the defendant approach the bench for a conference with The Court, at which time the following proceedings were had).
 "MR. CARNES: We do not except to anything the court said. The Jury is entitled to be instructed on the effect of heat of passion on these four elements of homicide.
 "THE COURT: They have these charges with them as written.
 "MR. STARNES: I object. That's the only thing they requested.
 "THE COURT: Gentlemen, you have some charges that are written with you. I assume you did not want me to repeat those.
"A JUROR: No, sir.
"THE COURT: Thank you very much.
 "(Whereupon, the Jury returned to the jury room at approximately six fifty p.m."
The jury continued to deliberate until 10:00 P.M., when they were excused for the night, and reassembled the next morning at 9:00 A.M. and resumed deliberations. Thereafter, during the morning, the verdict was returned.
Appellant takes the position that when the jury returned and requested the court to "re-read to the Jurors what constitutes first-degree murder, second-degree murder, first-degree manslaughter, and second-degree manslaughter," the court was in error in not instructing the jury "on the effect of heat of passion on these four elements of homicide." We agree with appellant as to the importance of the principle of heat of passion in the circumstances of this particular case, but the court was not in error in the matter. As stated, the court gave five charges on the subject, as requested in writing by defendant. No charge on the subject requested in writing by defendant was refused. Appellant complains that the oral charge of the court did not contain any reference to the heat of passion principle.
With few exceptions not applicable here, the trial court cannot be placed in error merely because its oral charge is not comprehensive of all pertinent principles of law. To prevent any injustice in this respect, parties have the right to request in writing charges that will supply principles omitted from the court's oral charge. Code 1940, Tit. 7, § 272; Bowensv. State, 54 Ala. App. 491, 309 So.2d 844, cert. denied 293 Ala. 746, 309 So.2d 850; Smith v. State, 53 Ala. App. 657,303 So.2d 157; Gray v. State, 52 Ala. App. 481, 294 So.2d 448.
It should be noted also that the court queried the jury as to whether any further instruction was desired, and the jury made it clear that nothing further was desired. When a jury calls for additional instruction and clearly delineates the area of its request, it is usually better for the trial court to remain within such area. To do otherwise ofttimes tends to appear to place the trial judge in the role of an interested *Page 1107 
advocate rather than an impartial arbiter.
Appellant urges that the trial court should have granted defendant's motion for a new trial. The ground of the motion relied upon by appellant was to the effect that after the trial, defendant had learned that one of the witnesses for the State, a police officer, was laughing, soon after he left the witness stand in the court room in which he had testified, and said, "I just done it for spite." One of defendant's sons and the son's wife testified accordingly on the motion for a new trial. There was no testimony to the contrary. The substance of the testimony of the police officer on the trial was that he came to the home of defendant and his wife soon after the homicide, that the defendant was running toward the patrol car and said to him, ". . I did it, I killed her, . . . She's not going to run around on me no more." The evidence on the trial was without dispute that defendant did kill his wife. It was also without dispute that defendant was convinced that his wife had been "running around" on him. This is true as to the evidence at the time the State rested and at the conclusion of the case. The granting of a motion for a new trial on a ground of newly discovered evidence is a matter largely resting within the sound discretion of the trial court. Maund v. State,254 Ala. 452, 48 So.2d 553. A new trial should not be granted on the ground of newly discovered evidence if it is merely cumulative and not of sufficient strength that it will probably change the result if a new trial is granted. Taylor v. State,266 Ala. 618, 97 So.2d 802; Cannon v. State, 53 Ala. App. 509,301 So.2d 272; Zuck v. State, 57 Ala. App. 15, 325 So.2d 531, cert. denied Ala., 325 So.2d 539. We are left in doubt as to what was meant by the alleged statement of the police officer, if such statement was made, but as cryptic as it was, the trial court cannot be held to have been in error in overruling defendant's motion for a new trial.
We have considered every insistence on error of able counsel for appellant and have searched the record for error prejudicial to defendant and have found none. The judgment should be affirmed.
The foregoing opinion was prepared by Supernumerary Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.