390 So.2d 1098 (1980)
Chester BLAND
v.
STATE.
7 Div. 717.
Court of Criminal Appeals of Alabama.
June 30, 1980.
Rehearing Denied August 19, 1980.
*1100 Joel E. Dillard of Baxley, Stuart, Ward & Dillard, Birmingham, for appellant.
Charles A. Graddick, Atty. Gen., and Samuel J. Clenney, III, Asst. Atty. Gen., for appellee.
LEIGH M. CLARK, Retired Circuit Judge.
The indictment on which appellant-defendant was tried and convicted was in pertinent part as follows:
"Chester Bland ... did falsely pretend to Moore-Handley, Inc. Homecrafters, with the intent to injure or defraud, that he was an agent of Miree Construction Corporation and by means of such false pretense did obtain from the said Moore-Handley, Inc. Homecrafters, building materials, the value of to-wit: $454.83."
The jury found him guilty, and the court sentenced him to imprisonment for seven years.
Two employees of Moore-Handley, Inc. Homecrafters testified on October 23, 1979, that defendant was at the place of business of said company at its Pelham store on March 13, 1979, and obtained material from the company which was placed in a truck that defendant was operating at the time. According to the testimony of one of the witnesses:
"Q. Was this a cash purchase or credit purchase?
"A. It was a credit purchase.
"Q. Did you have any discussion with the Defendant concerning any credit arrangement on this particular purchase?
"A. Yes, sir.
"Q. All right. What was the discussion?
"A. It was going to be charged to Miree Construction.
"Q. All right, what did he tell you, specifically?
"A. That he wanted to make a purchase and charge it to the account of Miree Construction.
"Q. Did he give you any other additional information than Miree Construction Company?
"A. Yes, sir, he gave me the job location.
"Q. What job location did he give you?
"A. 900 Building Oxmoor.
"Q. Did he give you any other information?
"A. Job Number.
"Q. And what is that Job Number?
"A. 780."
The other employee of Moore-Handley at Pelham also definitely identified defendant as the person operating the truck and obtaining the material. The material was never paid for by Miree Construction Company or by anyone else.
The payroll clerk for Miree Construction Corporation testified that Chester Bland was not an employee of Miree Construction Corporation and that he "was never on our payroll record at any time." She further said specifically that on March 13, 1979, Chester Bland "was neither an employee or a subcontractor" of Miree Construction Company. She further testified:
"Q. Let me ask you this, Mrs. Miree: On 3-13-79, did you have an agreement, or did the corporation have an agreement, with any subcontractor on a job No. 780?
"....
"Q. Could you answer that question, please, ma'am?
"A. We do not have a job 780.

*1101 "Q. Did you have an agreement with any subcontractor, or any individual, that was employed or in some contractual relationship with Miree Construction Company, to do any construction on the 900 Building on Oxmoor on 3-13-79?
"A. No, sir."
The evidence as a whole shows without dispute that the invoice of Moore-Handley for the particular transaction under consideration bore the purported signature of one James Cook, that the name Chester Bland was not on said invoice.
The defendant testified in the case. He unequivocally denied any knowledge of or participation in the transaction. He stated positively that he had "never been in Moore-Handley in Pelham." He further said that he had "never met anybody by the name of James Cook."
There was considerable other testimony in the case, but the above summary of some of it is sufficient to delineate the real issue of fact between the parties: Who falsely pretended to Moore-Handley, with the intent to injure or defraud, that he was an agent or representative of Miree Construction Corporation and thereby obtained the building materials? It was for the jury to determine that issue. There is no contention to the contrary. There was no contention on the trial, and there is no contention on appeal, that all of the elements of criminal fraud, or obtaining property by false pretense, did not exist.
On account of his indigency, counsel appointed by the court represented him to and through the trial. From the time of his appeal, including the hearing of a motion for new trial, he has been represented by different appointed counsel.
Appellant presents five issues. We consider them separately in the language and in the order of appellant's brief.

I

DID THE TRIAL COURT ERR IN DENYING DEFENDANT'S MOTION FOR NEW TRIAL?
As stated by appellant, the motion was "based upon newly discovered evidence." The newly discovered evidence now relied upon by appellant is shown by the testimony of the attorney for defendant during the trial, and by the testimony of Mr. Christopher Shehee. The testimony of the former attorney for defendant was to the effect that he did not know of the alleged newly discovered evidence at any time before trial was concluded on October 23, 1979, which testimony appellant contends is sufficient to show that the newly discovered evidence could not have been discovered before trial by the exercise of due diligence. Although appellee does not definitely concede this point, we find it unnecessary to decide it at this time. We consider now the question whether Mr. Shehee's testimony is sufficient to justify a reversal of the ruling of the trial court denying the motion for a new trial.
The testimony of Mr. Shehee was strong and positive to the effect that on March 14, 1979, the day after the transaction as to the building materials alleged in the indictment, while he was employed by Moore-Handley at Pelham, he took part in two transactions with a man who represented himself to be James Cook who affixed his signature to two Moore-Handley invoices. He testified strongly that that man was not the defendant. He said he saw the purported James Cook sign each of the documents and receive the merchandise reflected on them. He further testified that he did not know the defendant and that he had never seen him before at Moore-Handley Homecrafters at Pelham. Counsel for appellant, with commendable frankness and citation of authorities, recognizes "the heavy burden carried by an appeal of a trial court's denial of a motion for New Trial based upon newly discovered evidence." He concedes the elements necessary to establish a right to a new trial on the ground of newly discovered evidence:
"In Taylor v. State, 266 Ala. 618, 97 So.2d 802, the Supreme Court held:
"`To establish his right to a new trial on the ground of newly discovered evidence, *1102 the defendant must meet the following requirements: (1) that the evidence is such as will probably change the result if a new trial is granted; (2) that it has been discovered since trial; (3) that it could not have been discovered before the trial by the exercise of due diligence; (4) that it is material to the issue; and (5) that it is not merely cumulative or impeaching.'" Young v. State, Ala.Cr.App., 346 So.2d 509, 514 (1977).
Notwithstanding the value of appellant's argument as to the existence of the first four elements stated above, we find little to support any contention that the newly discovered evidence was "not merely cumulative or impeaching," which constitutes the fifth element. When the test of that element is applied to the newly discovered evidence, consideration must be given to the crucial factual issue in the case, which was whether defendant was the person who fraudulently obtained by false misrepresentation building materials on March 13, 1979. Unless it had value for that purpose, it would have been without any value whatever; it would have been inadmissible as immaterial and irrelevant. It cannot reasonably be said, we think, that the evidence could not have had some value on such issue, but whatever value it could have had would have been cumulative only, evidence in addition to that presented by the testimony of witnesses for each party on the trial of the case.
In considering the five essential elements, it is to be observed that the first element is as to the potency of the evidence; the second is as to the time of its discovery; the third is as to its discoverability before trial; the fourth is as to its materiality. Meeting the requirements of those elements adds nothing in and of itself to a compliance with the fifth element. The fifth element stands alone, and we find no authority for holding that the newly discovered evidence in this case is not cumulative merely.
In an effort to supply authority for his position on the point, appellant relies on Grissett v. State, 18 Ala.App. 675, 94 So. 271 (1922). He asserts in his brief:
"Though Grissett's conviction was based upon circumstantial evidence, the newly discovered evidence was similar to that of Chris Shehee in that it tended to prove the quilt of another to the exclusion of the defendant."
We find such statement correct, but it does not lead to appellant's desired result in this case. In Grissett, supra, defendant was convicted for the possession of a still for the manufacture of intoxicating liquor. In Grissett, supra, at 94 So. 272, it is stated:
"Except for the fact that the still found was located on land to which defendant held title, the evidence tending to convict the defendant was entirely circumstantial.... The newly discovered evidence offered in support of the motion was to the effect that the witnesses testifying had been to the still about a week before the officers found it and that it was in the possession, under the control, and was being operated by Snyder, and that defendant was not present, that the next day after the still was found by the officers Snyder called witness off and asked him if he had heard about the officers getting his (Snyder's) still...."
In that case, the possession or operation of one still only was involved. In this case, insofar as the new evidence is concerned, three transactions were involved, one on March 13 and two on March 14, 1979. There was no direct testimony in that case that the still was ever "in the possession, under the control, and [or] was being operated" by defendant. Although it appears that in Grissett, supra, defendant contended that Snyder possessed and operated the still, there was no direct evidence thereof. We do not agree with appellant's characterization of the newly discovered evidence in Grissett, supra, as being "similar to that of Chris Shehee in that it tended to prove the guilt of another to the exclusion of the defendant," and it is to be said also that it was dissimilar to that of Chris Shehee in that it was not cumulative. In the instant case, there was definite eyewitness testimony that the defendant was the person guilty *1103 of the crime alleged. Furthermore, in the instant case there was definite evidence by the testimony of defendant himself that he was not the person that committed the crime. Even if Mr. Shehee had been present on March 13, 1979, at the time of the commission of the alleged crime, and on the motion for a new trial he had testified that the man who obtained the building materials in the manner charged in the indictment and narrated by the testimony of witnesses was not the defendant, such testimony would be merely cumulative on the crucial issue of the identity of the person. Even in that circumstance, the newly discovered evidence would not meet the requirement that it was not merely cumulative. A fortiori, the newly discovered evidence now considered that would merely afford an inference that defendant was not the person who committed the crime would not meet the requirement that the newly discovered evidence must not be merely cumulative.
In addition to our stated reason for rejecting appellant's contention that he was entitled to a new trial by reason of newly discovered evidence, we note that in the absence of an abuse of discretion on the part of the trial court, an appellate court should not reverse the ruling of the trial court. The record shows that the trial judge acted with patience and indulgence in permitting defendant to present all evidence available to him on the hearing of the motion for new trial, continuing the hearing thereof, at the instance of defendant, after the court had heard some of defendant's evidence, from December 3, to December 7, 1979. The trial judge doubtless had well in mind the strength of the testimony of the two witnesses who identified defendant as the one who committed the crime. He doubtless also had well in mind the testimony of Mr. Shehee as to the man whom he dealt with on March 14 under the name of James Cook, whom he described as a man of the same race as defendant but otherwise as a person who could hardly have been mistaken for defendant or vice versa. Interesting also, as to the trial court's acute and comprehensive understanding of the facts in the case, are pertinent parts of his comments on the hearing of the motion for a new trial, promptly after movant's counsel argued, in reply to the position taken by State's counsel that the motion itself did not present grounds for a new trial, that defendant should be allowed to present evidence on the subject. The comments of the trial judge are shown in the following:
"THE COURT: I think that would be relevant testimony in this hearing.
"MR. DILLARD: We would like to put that on anyway, Your Honor.
"THE COURT: I will allow that, but this thing is sort of unique.
"MR. DILLARD: I understand.
"THE COURT: The Defendant brings a brother in here and sits him right on the front seat [referring to what happened on the trial of the case], that looks almost just like him to me. They could have been Siamese twins and wouldn't have looked more like each other. In examination of some of the witnesses, the Defense asked the question, `Which one of these men would you say got the merchandise?' And the witness identified the Defendant; although, there was a striking similarity between the two of them.
"Now, the point is this, on the trial of the case the Defendant attempted to infer that his brother was the one that got the goods, or could have been his brother, and that didn't work out and now, he comes in here with another identity situation. As I say, I am willing to hear that.
"MR. DILLARD: Thank you, Your Honor...."
We follow what was aptly and recently said by Presiding Judge Harris in McBryar v. State, Ala.Cr.App., 368 So.2d 568, 574, cert. denied, 368 So.2d 575 (1979):
"The appellate courts look with disfavor on motions for new trial based on newly discovered evidence and the decision of the trial court will not be disturbed absent abuse of discretion. Zuck v. State, 57 Ala.App. 15, 325 So.2d 531. The trial *1104 court in the case at bar ordered a continuance to provide appellant with the fullest opportunity to gather any new evidence available. He heard all of the evidence and arguments of counsel and weighed the credibility of that evidence. His ruling on the motion for new trial will not be disturbed on appeal."
Another phase of the testimony of Mr. Shehee on the hearing of the motion for a new trial may need discussion in this part of this opinion devoted to appellant's Issue I, in order to help clarify a very potentially confusing situation as to the facts in the case that relates also to one or more of the other issues presented by appellant. There would be less confusion if it were known in this case whether there was a man by the name of James Cook who had any part in obtaining material from Moore-Handley Homecrafters at Pelham on March 13 or March 14, 1979. In the absence of such knowledge, James Cook still has the misleading capacity of an ignis fatuus. Mr. Shehee testified that he saw the man place the purported signature of James Cook on the invoices on March 14. Neither of the witnesses for the State on the trial testified that he saw defendant or anyone else place the purported signature on the invoice on March 13. There was evidence on the trial to the effect that another man was to some extent working with defendant in connection with the transaction on March 13. There was also evidence on the trial, which will be hereafter discussed under the topic as to appellant's Issue II, that appellant returned to Moore-Handley Homecrafters at Pelham on March 14 and transacted business as to two orders, which Mr. Shehee testified were documented by two invoices upon which a man other than the defendant placed the purported signature of James Cook. A new trial would perhaps aid in clarifying the mystery as to the other person, but the newly discovered evidence, when considered alone or when considered with all the other evidence on the trial of the case, would shed no light whatever on the real issue between the parties on the trial now under review.

II

DID THE TRIAL COURT ERR IN ALLOWING THE STATE TO INTRODUCE EVIDENCE OF SEPARATE OFFENSES NOT EMBRACED BY THE INDICTMENT?
The evidence to which reference is made was introduced by the State on rebuttal, after defendant had testified that he had never been to Moore-Handley at Pelham. The evidence shown in rebuttal was that defendant was at Moore-Handley Homecrafters at Pelham on March 14, 1979, and was a party to two transactions with Moore-Handley on that day. This was one of the witnesses who had previously testified as to the transaction with defendant that constitutes the incident charged in the indictment. His testimony on rebuttal is four transcript pages in length before there was any objection by defendant as to it. During that time, he had testified that defendant had come to him wanting to make a purchase for Miree Construction Company. He said it was the defendant, the same person who had procured building materials the day before. He further said that he "wrote up" two invoices for the transaction, which were identified as State's Exhibit 3 and State's Exhibit 4. All of this was without objection by defendant. The first objection was when the State offered Exhibits 3 and 4 in evidence. Then defendant's counsel stated, "Judge, we object on the grounds that these were made on separate occasions than on the occasion that Defendant was charged with in the indictment." Even if the objection made was sufficient to preserve the point now made as to "evidence of separate offenses," it is obvious that the evidence to which the objection was made was of the same nature as, and no more objectionable than, previous lengthy testimony of the witness, and could hardly have been harmful to defendant. Moreover, the evidence falls within at least one of the exceptions to the exclusionary rule against the admissibility of evidence as to other crimes.

*1105 "The crime of false pretense has the requisite intent to defraud as its primary element. Therefore, it is generally admissible to show other similar criminal acts to prove this intent and such constitutes one of the major exceptions to the general rule that one cannot introduce prior criminal acts." Gamble, McElroy's Alabama Evidence, § 70.01(10) (1977).
Although, as previously noted, the battleground between the parties was not as to a question of fraudulent intent, this does not militate against the principle that the trial court is not to be reversed for admitting evidence that stands the test of legal principles pertaining to that subject. In Snipes v. State, 50 Ala.App. 139, 277 So.2d 413, wherein both identity and fraudulent intent were actually contested, Judge Harris, now Presiding Judge, renders a valuable treatment of the subject as it pertains to obtaining property by falsely impersonating another with the intent to injure or defraud. In Snipes the admissibility of evidence of other offenses to show identity and to show intent is solidly established.
The court was not in error in overruling defendant's objection to the admission in evidence of State's Exhibits 3 and 4.

III

DID THE TRIAL COURT ERR IN REFUSING TO ALLOW TESTIMONY AT THE NEW TRIAL HEARING REGARDING THE GENUINENESS OF A PERSON'S HANDWRITING WHEN COMPARED WITH THAT PERSON'S PROVED HANDWRITING?
The reference in appellant's Issue III is to defendant's effort on the hearing of the motion for a new trial to show by Mr. Shehee that the purported signature of "James Cook" on the two invoices on March 14 was the handwriting of the same person who imposed the purported signature of "James Cook" on the March 13 invoice. We refer to the transcript as to the particular issue:
"Q. I will ask you, with respect to State's Exhibit One, if you recognize the handwriting that appears above Customer's Signature, as the same handwriting with which you are familiar by virtue of your transactions with that same individual, regarding State's Exhibits Three and Four, and I will ask you not to answer-I am sure there will be an objection.
"THE COURT: I sustain the objection."
Defendant's counsel then made a clear statement of his offer of proof.
For two distinct reasons, the court was correct in sustaining the objection to the question. The appellant relies largely upon Code of Alabama 1975, § 12-21-40:
"Comparison of a disputed writing with any writing admitted to be genuine or proven to the reasonable satisfaction of the court to be genuine shall be permitted to be made by witnesses who are qualified as experts or who are familiar with the handwriting of the person whose handwriting is in question, and such writings and the evidence of witnesses respecting the same may be submitted to the court or jury trying the case as evidence of the genuineness or otherwise of the writings in dispute." (Emphasis supplied)
The source of § 12-21-40 is Acts 1915, No. 90, p. 134, which constituted a change in the common-law rule on the subject. For the statutory rule to be applicable, there must be at least one disputed writing. The evidence was undisputed that the purported signature of one James Cook was on State's Exhibits 1, 3 and 4. Mr. Shehee testified that a person different from defendant placed the purported signature on Exhibits 3 and 4. Appellant contends that by allowing evidence to show that the purported signature on State's Exhibit 1 was that of the same person that placed the purported signature on Exhibits 3 and 4 would tend to prove that defendant was not guilty as to the transaction represented by State's Exhibit 1. Even so, there is no basis for the application of the cited Code Section. Although the three documents were in evidence for consideration by the jury, some of *1106 whom doubtless knew as much as Mr. Shehee about comparing handwritings, there was no evidence that the placing of the purported signature on Exhibit 1 was by a person different from the one who placed it on Exhibits 3 and 4. As shown above, there was no testimony of any witness that defendant placed the purported signature on Exhibit 1.
For another reason, the trial court was correct in sustaining the State's objection to testimony by Mr. Shehee as to whether the handwriting on Exhibit 1 and the handwriting on Exhibits 3 and 4 were that of the same person. Mr. Shehee had no more familiarity with the handwriting of the person who wrote the name of James Cook on the vouchers of March 14 than did the trial judge or any of the jurors in the case. It is hardly likely that the legislation contemplated such a situation. Although there has been considerable liberality in qualifying a witness as one who is "familiar with the handwriting of the person whose handwriting is in question," there would be nothing to be gained by his testimony if he were no more "familiar" with the handwriting than the triers of the facts in the case. It must be recognized that the evidence called for is opinion evidence, as to which it is correctly stated:
"The opinion rule has as its basis the rationale that the lay witness should not give his opinion when he could give the jury the facts he observed and render them as qualified as he, to draw a conclusion or opinion...." Gamble, McElroy's Alabama Evidence, § 127.01(3) (1977).
IV
DID THE TRIAL COURT ERR IN PERMITTING THE STATE TO ELICIT TESTIMONY FROM THE DEFENDANT REGARDING HANDWRITING SPECIMENS AFTER THE DEFENSE RESTED, SAID HANDWRITING SPECIMENS HAVING BEEN LOST BY THE STATE AND, THEREFORE, UNAVAILABLE AT TRIAL?
The reference in Issue IV is to something that took place just after the defendant had testified and the transcript shows that the "DEFENSE RESTS." The transcript then proceeds as follows:
"(WHEREUPON, here was a bench conference between the Court and Counsel for the State and Counsel for the Defendant and out of the hearing of the court reporter; after which, the following took place:)
"MR. DENSON: Judge, we want to enter an objection right here, at this point. The State said they had no further questions and we said we had no further questions.
"THE COURT: All right, let me have it.
"MR. HILL: Judge, I believe the witness wants to tell us something, I am not sure.
"THE COURT: Go ahead.
"MR. BLAND: At the time I was arrested, Bill Wynn was my lawyer. The arresting officer, he had me write James, something, Cook, about twenty-five times and they were going to send that analysis to Montgomery for a handwriting expert to prove that I did do it or not and during that time, they found that my handwriting wasn't the writing on the ticket.
"MR. HILL: Your Honor, we are going to move to exclude all of that.
"MR. DENSON: No, Your Honor....
"THE COURT: The Court would order the State, or any of the State's Investigating Officers, including the private officer, to, at this time, to furnish to the court and [any] handwriting speciment [specimen], that is just exactly what the Court is fixing to do, for the examination of the Court.
"MR. HILL: We would be glad to stipulate this report, enter this into evidence, Your Honor, if the Court would like.
"THE COURT: Put this in the record and have the Clerk file it."
Thereupon, the court excused the jury from the courtroom and directed that they go to lunch, giving them lengthy appropriate instructions. After the noon recess, the following occurred out of the presence of the jury:

*1107 "MR. DENSON: Judge, it is my impression, sir, that we are going to introduce those handwriting samples that are already made or are we going to introduce the letter or both of them.
"MR. HILL: Here is State's Exhibit Two, we are ready to stipulate, if the defendant wants to put it in evidence. We honestly don't have them; we are not trying to hid [hide] them.
"THE COURT: What happened to them. Did they keep them.
"MR. HILL: If they kept it or it got lost in the mail, this is all I've got, Judge. We are not trying to hid [hide] anything.
"THE COURT: Do you want that in? I don't think the jury has heard it?
"MR. DENSON: I want it in, because he testified those were made.
"MR. HILL: Sure, we will put it in, Judge. We are going to ask him to stipulate to it, we are ready.
"THE COURT: State and Defense Counsel stipulate that State's Exhibit Two....
"MR. HILL: Judge, since this issue has been raised in front of the jury, can I offer it in front of the jury?
"THE COURT: Yes, sir. Bring the jury in, please.
"(WHEREUPON, the jury came into the courtroom from the jury room and the following proceedings were had):
"THE COURT: State's Exhibit No. Two is received into evidence without objection. Who will you have Mr. Hill?
"MR. HILL: We would like to call Mr. Acker back to the stand please."
It may be, as appellant urges, that defendant was hurt to some extent by the proceedings as above narrated, but we find nothing therein that justifies a conclusion that the trial court committed error prejudicial to defendant. Furthermore, as appellant concedes, it appears that the handwriting specimens were lost through no intentional act on the part of any agent for the State. It is argued by appellant that for "the District Attorney to elicit testimony from the defendant-particularly after the defense rested-concerning the handwriting specimens, and to then fail to produce them, is reversible error, particularly over the timely objection of defense counsel." We cannot agree with this argument. In the first place, an inquiry as to whether there was reversible error is addressed to action of the court, not to action of counsel. Furthermore, it is to be noted that notwithstanding the possibility of an objection by defendant's counsel to further testimony by the defendant, State's counsel moved the court "to exclude all of that," but defendant's counsel then said, `No, Your Honor." If there was any erroneous action at that time, defendant obviously waived it. Appellant further argues that there is "clear implication to the jury ... that the Court received the specimens, but that counsel for the defendant prevented their introduction into evidence." Counsel's commendable loyal zeal for his client is much stronger than the point he endeavors to make. No error prejudicial to defendant is to be found in appellant's Issue IV.

V
DID THE STATE FAIL TO PROVE THAT THE PERSON WHO SIGNED "JAMES COOK" TO THE INVOICES IN ISSUE EVER OBTAINED THE PROPERTY DESCRIBED IN THE INDICTMENT?
As previously observed, the State did not undertake, and it was not incumbent upon the State, to show that the "person who signed `James Cook' to the invoices in issue ever obtained the property described in the indictment." The State undertook only, as it was incumbent upon the State to do, to prove that defendant "obtained the property described in the indictment." There was ample evidence thereof, both direct testimony and circumstantial evidence. In addition to some of the evidence summarized in the early part of this opinion, we note specifically that Mr. Carl Williams testified as to what defendant did in connection with the particular transaction on March 13, 1979, as follows:
"Q. Do you recall this particular ticket?
*1108 "A. Yes, sir.
"Q. Do you recall whether or not this material was loaded?
"A. Yes, sir.
"Q. Could you tell us how the material was loaded?
"A. Well, first, you see, I had to put the information on, before he came around to the back.
"Q. Do you know who picked up these materials?
"A. Yes, sir.
"Q. Is that individual in the courtroom today?
"A. Yes, sir.
"Q. Could you point him out, please sir?
"A. The man over there in the blue suit and red tie.
"MR. HILL: All right, could the record reflect that he identified the Defendant?
"THE COURT: So ordered."
The case is free of error prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.

ON REHEARING
LEIGH M. CLARK, Retired Circuit Judge.
With his application for rehearing appellant filed a request for additional facts pursuant to Rule 39(k), ARAP. He states that the following facts were omitted from the opinion:
"1. Mike Acker, for the prosecution, testified that Chester Bland signed for the materials which are described in the indictment. (R. 39)
"2. Mike Acker, for the prosecution, also testified that only Chris Shehee or Ralph Bryant could have effected final delivery of the goods described in the indictment and the other invoices admitted into evidence at trial. (R. 37)
"3. The invoices which were admitted into evidence regarding materials not described in the indictment, which were Exhibits 3 and 4, dealt with transactions subsequent to the transaction for which Chester Bland was indicted. (R. 78)."
In reply to the request, we state:
1. Mike Acker, for the prosecution, testified that Chester Bland signed for the materials which are described in the indictment, but immediately after so testifying, in answer to a question by the court "Did you see the Defendant sign the document" he replied: "No, sir, I did not."
2. We are unable to state that the record shows that as factual testimony "Mike Acker, for the prosecution, also testified that only Chris Shehee or Ralph Bryant could have effected final delivery of the goods described in the indictment and the other invoices admitted into evidence at trial."
3. The invoices which were admitted into evidence regarding materials not described in the indictment, which were Exhibits 3 and 4, dealt with transactions subsequent to the transaction for which Chester Bland was indicted.
Mr. Shehee testified on the motion for a new trial that he saw the man place the purported signature of James Cook on the invoices on March 14. Neither of the witnesses for the State as to the transaction testified that he saw defendant or anyone else place the purported signature on the invoice on March 13. There was evidence on the trial to the effect that another man was to some extent working with defendant in connection with the transaction on March 13.
In our inability to accept as factually correct, as distinguished from the mere surmise of the witness Mike Acker not based on anything that he observed, is to be found *1109 the basis for the major difference between our view and that of counsel for appellant as to the action of the trial court in overruling defendant's motion for a new trial.
The application for rehearing should be overruled.
OPINION EXTENDED.
APPLICATION OVERRULED.
All the Judges concur.