BOWEN, Presiding Judge.
Curtis Robinson was convicted in 1980 of assault with intent to murder David Kel-soe, given a five-year suspended sentence, and placed on two years’ probation. His conviction was affirmed by this court in Robinson v. State, 430 So.2d 883 (Ala.Cr.App.1983). In 1984, he filed a petition for writ of error coram nobis alleging that he was entitled to a new trial on the basis of newly discovered evidence. The trial court denied the petition and Robinson appealed.
A summary of the evidence presented at Robinson’s trial, excerpted from this court’s opinion reported at 430 So.2d 884-85, discloses the following:
“On May 26, 1979, the Southern Christian Leadership Conference (SCLC) conducted an anniversary march in Decatur, Alabama, protesting the arrest and conviction of Tommy Lee Hines on rape charges. This march was blocked by a number of the members of the Invisible Knights of the Ku Klux Klan (Klan). In the presence of twenty or more armed policemen, a confrontation erupted between the SCLC marchers and the Klan. During that confrontation, the appellant Curtis Robinson, drew his pistol and fired a shot which severely injured David Kelsoe, a member of the Klan.
“The appellant admitted that he shot and injured Kelsoe. However, he contended that he did so in self-defense. He stated that he was not a part of the SCLC march initially, but rather, followed the marchers in his automobile with his family after he discovered the purpose of the march. He did not expect a confrontation with the Klan.
“Appellant’s evidence revealed that after the Klan had blocked the SCLC march, its members armed with ‘clubs,’ only, broke through the police lines separating the two groups and attacked SCLC marchers. At the height of the ensuing confrontation, members of the Klan attacked appellant’s car. A front tire was ‘shot out,’ and a headlight was broken. At this point, the appellant grabbed his pistol and exited his car. The appellant contended that he shot Kelsoe only after Kelsoe raised his ‘club’ in a threatening manner and approached him. A police officer, who witnessed the incident, testified that he would have done the same thing had he been in the appellant’s shoes.
“The State’s evidence, in addition to proving that the appellant shot and injured Kelsoe, tended to dispute the appellant’s self-defense assertion. Another police officer testified that he saw the appellant, whom he knew and recognized, several blocks from and before the confrontation with the Klan, and that the appellant held his pistol up and stated that he was ‘going to get him a couple of them dudes.’ (R. 1132) Kelsoe testified that he did not attack the appellant with a raised club. (R. 1280, 1305).”
Robinson’s coram nobis petition asserts that at the time of his trial he was unaware of and could not, in the exercise of due diligence, have discovered a prior Klan conspiracy to use violence to block the SCLC march. As part of his pre-trial preparation for Robinson’s defense, Robinson’s counsel obtained an expurgated copy of the report of an F.B.I. investigation following the May 26, 1979, confrontation between the black marchers and the Klan. Based on the F.B.I. report, the Justice Department concluded, prior to Robinson’s trial, that the Klan had violated no federal statute and was not subject to prosecution.
Sworn statements accompanying Robinson’s coram nobis petition indicate, however, that members of the Klan had, in *714 fact, planned to stop the black demonstrators by violence, had lied to the F.B.I., and had participated in a planned concealment of the conspiracy. This evidence surfaced as a result of discovery proceedings in a federal civil suit filed by the SCLC against the Klan and served as the basis for the Justice Department’s reopening its investigation into the May 26, 1979, incident in Decatur. As a consequence of the new investigation, conspiracy and obstruction of justice indictments were returned against nine Klansmen, including David Kelsoe, whom Robinson had been convicted of assaulting. Robinson now claims that, had the jury known of the Klan conspiracy to attack him and other blacks in order to prevent them from parading, it would never have convicted him of assault with intent to murder a Klansman.
A new trial may be granted on the basis of newly discovered evidence if a coram nobis petitioner successfully shows the following: “(1) that the evidence is such as will probably change the result if a new trial is granted; (2) that it has been discovered since the trial; (3) that it could not have been discovered before the trial by the exercise of due diligence; (4) that it is material to the issue; and (5) that it is not merely cumulative or impeaching.” Taylor v. State, 266 Ala. 618, 620, 97 So.2d 802, 804 (1957); Bland v. State, 390 So.2d 1098, 1101-02 (Ala.Cr.App.), cert. denied, 390 So.2d 1109 (Ala.), cert. denied, 451 U.S. 991, 101 S.Ct. 2332, 68 L.Ed.2d 851 (1980).
Although the evidence supporting Robinson’s petition meets the requirements (2) that it has been discovered since trial, (3) could not with due diligence have been discovered before trial, and (4) is material, it does not, in our judgment, satisfy requirements (1) and (5). We agree with the trial court’s finding that the evidence is merely cumulative or impeaching and would not be likely to change the result in a new trial. The lower court’s order denying Robinson’s petition specifically notes the following:
“The Court is of the opinion, having participated in the trial throughout its course, that the jury was well advised of petitioner’s position, that the Klansmen were there for some other purpose than a counter-demonstration. The jury was made completely aware of petitioner’s claim that he was set upon by a Klan group who were present for the single aim of assaulting him and other marchers, and this by previous plan. The array of ax handles, clubs and other weapons taken from Klansmen obviously showed pre-concert and petitioner argued it strenuously at his trial. Contra, the State argued just as strenuously petitioner’s arming himself before the march with a pistol, brandishing it before a police officer, and making his threats as to what he anticipated doing with it. An additional recital at another trial would not, in the opinion of the Court, be likely to change the result.
“The evidentiary vehicles submitted by petitioner, as compared to the transcript of the trial proceedings, reflect only an additional quantity of evidence supporting petitioner’s position at trial. In short, it is merely cumulative. This is fatal to his position.”
The crux of Robinson’s argument is that, although he suspected a prior Klan conspiracy to use violence against the blacks who marched in Decatur on May 26, 1979, at trial he was unable to prove preconcerted Klan violence. Nevertheless, as the trial court observed, virtually every witness at Robinson’s trial verified the fact that the Klansmen were armed with pick handles, ax handles, clubs, and sticks, the presence of which implied preplanned violence.
In addition, Klansman David Kelsoe admitted that, prior to the confrontation with the black marchers, the Klan assembled “at the pumps across the river.” Decatur police officer Kenneth D. Collier testified that “the pumps” or the “pump station located just across the Tennessee River north of Decatur ... had become a common meeting ground for the Klan prior to any planned march or activity.” Collier acknowledged that the Klansmen were armed with “clubs and sticks and machete *715 knives and things of that nature” as they assembled at “the pumps” before their confrontation with the SCLC.
Robinson’s newly discovered evidence that certain members of the Decatur Kla-vern of the Klan met two days prior to the SCLC march to discuss plans for stopping the march directly impeaches the trial testimony of Klansman Kelsoe who stated that he was the “Exalted Cyclops” of the Decatur Klan organization, that the Decatur Klavern met on May 24, 1979, and that there was no discussion of what they were going to do on May 26th, the date of the march.
Finally, both Decatur police officer Marlon Owens and Kelsoe, the two State’s witnesses who provided the most damaging testimony against Robinson, admitted at trial that as the Klansmen broke through the police lines they yelled “Kill the niggers.” A comparison of the trial testimony with the documents accompanying Robinson’s petition supports the trial court’s conclusion that the new evidence was merely cumulative or impeaching on the issue of preplanned violent Klan activity. Although the new evidence is emotionally poignant in that it exposes and substantiates a vicious conspiracy, it is legally “no more than newly discovered evidence of a cumulative character on the most prominent issue involved in the original trial,” Ex parte Cobern, 274 Ala. 354, 355, 148 So.2d 631, 631 (1963).
The order denying the petition is also due to be affirmed because the newly discovered evidence would not “probably change the result if a new trial is granted.” Taylor v. State, supra, 266 Ala. at 620, 97 So.2d 804. At trial, there was evidence that, prior to Robinson’s ever being threatened by armed Klansmen, he brandished a pistol along the parade route and said he was “going to get him a couple of them dudes.” (R. 1132). “[I]t is not within our province, even if we were so inclined, to announce and hold that the jury should have given no credence to the testimony of the witnesses introduced and examined by the prosecution in this case.” Davis v. State, 29 Ala.App. 421, 423, 198 So. 153, 155, cert. denied, 240 Ala. 160, 198 So. 155 (1940).
Furthermore, Robinson’s own testimony established that, when his vehicle came into view of the Klan and the Decatur police lined up along the street, there were no skirmishes. The two groups were maintaining their respective positions with no fighting or violence. Nevertheless, at that point Robinson took his pistol from the console, got out of his car, and stood in front of the automobile with his hand on the gun in his pocket.
From the State’s evidence at trial, the jury was authorized to find that Robinson himself was not entirely free from fault in bringing on the difficulty. “[A] defendant must be entirely free from fault in bringing on the difficulty before he can set up the plea of self-defense.” Scroggins v. State, 120 Ala. 369, 370, 25 So. 180, 181 (1899). Thus, while the new evidence reveals a sinister Klan conspiracy and tangibly documents what was strongly implied at Robinson’s trial, it does not “destroy or obliterate the effect of the evidence upon which the verdict rested ... [or] defeat the verdict returned,” Reynolds v. City of Birmingham, 29 Ala.App. 505, 507, 198 So. 360, 362 (1940). The order of the trial court is affirmed.
AFFIRMED.
All Judges concur.