Appellant was convicted of rape and sentenced to imprisonment in the penitentiary for a term of twenty years. At arraignment, in the presence of counsel, he interposed a plea of not guilty. After sentence was imposed he gave written notice of appeal and waived the benefit of a suspended sentence. The judgment entry reflects that appellant was given one year, four months and seventeen days credit for time spent in jail prior to trial.
The evidence presented by the State made out a clear-cut case of rape and there is no contention to the contrary. Appellant did not testify nor was any testimony offered in his behalf.
The prosecutrix testified that, on the afternoon of January 29, 1979, she attended an open house party given by her husband at the University of South Alabama Medical Center where he was employed. At approximately 5:30 p.m., she and her husband left the party and went home in separate cars. Upon arriving home she got her checkbook and went shopping at the Delchamps store located on the corner of McGregor and Airport Boulevard. She bought three bags of groceries and carried them to her car. As she was putting the groceries on the passenger's side of the front seat of her car she noticed a dark green station wagon drive up and stop near her car. It was occupied by two white males. One of the men remained in the car and the other got out and moved as if he were going into the store. Suddenly and without warning this man came up behind the prosecutrix and placed what appeared to her to be a straight razor on her neck. He ordered her to get in her car and drive. She protested and asked him what he was going to do and he replied, "You will find out."
The prosecutrix started driving but told the man she could not see well at night. She was then ordered to crawl over him and the man started driving. The green station wagon followed close behind. Appellant ordered the prosecutrix to get out of her car and into the station wagon. All of her clothes were removed and appellant ordered her to have oral sex with him and then forced her to have sexual intercourse with him. After gratifying his lust he left the scene purportedly to buy cigarettes, driving the prosecutrix's car. After he drove away she was forced to have sexual intercourse with appellant's companion. When appellant returned he forced the prosecutrix to have sexual relations with him again. Appellant then drove the victim back to Delchamps parking lot where he got in the station wagon and the two assailants drove away.
The prosecutrix returned home and fell in the door of her home. She was finally able to tell her husband that she had been raped. Later she, her husband and Detective Cliff Lockett drove back to the scene of the crime. The prosecutrix reported to the officers that two cameras and a C.B. radio were stolen from her automobile that night. The two cameras were later returned to her by Detective Lockett.
The rape was committed on Monday night and the following Friday the prosecutrix attended a lineup of six persons and without the slightest hesitation she identified appellant and his companion as being the two men who raped her. She also made a positive in-court identification of appellant as the man who raped her twice on that Monday night.
Officer Eugene Ganoe of the Mobile Police Department testified concerning the lineup in which appellant appeared. Over objection Officer Ganoe stated that he told the prosecutrix on the evening of the lineup, "I told her about __ as I do most all people __ We have someone that may or may not be the person who attacked her. ___ I told her I was gonna have six people come up to the glass and turn ninety degrees, rotate, then go back and get into line. ___ I told her don't go out with the idea that you must pick someone, that she had to pick someone. That he may or may not be out there." Officer Ganoe further testified that after the prosecutrix viewed the lineup she immediately said, "That's them right there sir." She identified appellant and his *Page 206 
companion __ Thomas R. Selyn. Officer Ganoe stated that he did not tell the prosecutrix that her assailants were going to be in the lineup.
Officer Ganoe also testified that he gave appellant a waiver of rights form and read it aloud to him and gave him a copy to read along with him; that appellant signed the form and told the officer that he understood what he was reading. The waiver form reads as follows:
 "I, Stanley Fergusen, have been informed by the undersigned Law Enforcement Officers, prior to being questioned by them, that I am suspected of the offense of rape in Mobile County, Alabama on the 1-29th-79, and have been informed of my rights as follows:
 "1. That I may remain silent and do not have to make a statement at all.
 "2. That any statement which I might make, may and will be used against me in Court.
 "3. That I have a right to consult with an attorney before making any statement and to have such attorney present with me while I am making a statement.
 "4. That if I do not have enough money to employ an attorney I have the right to have one appointed by the Court to represent me, to consult with him before making any statement, and to have him present with me while I am making a statement.
 "That if I request an attorney no questions will be asked me until an attorney is present to represent me.
 "That at any time during the questioning I may request that the questioning be stopped and it shall be stopped.
 "After having my rights explained to me, I freely and voluntarily waive my right to an attorney. I am willing to make a statement to the officers. I can read and write the English language, and fully understand my right to an attorney. I have read this waiver of counsel and fully understand it.
 "No threats or promises have been made to me to induce me to sign this waiver of rights and counsel, and to make a statement to the officers on this 2nd day of February."
This witness further testified that he did not threaten appellant, or promise him anything, or offer any rewards or other inducements to get him to sign the waiver of rights form. Officer Ganoe did not question appellant concerning the charge against him but left that responsibility to Officer O.C. Lockett who was coming on duty to work his shift. However, he did tell Officer Lockett that appellant had been given theMiranda rights and had signed the waiver of rights form.
Officer Lockett interrogated appellant the night of the lineup. The voluntariness predicate was laid and appellant admitted to him that he and the co-defendant grabbed the prosecutrix in the parking lot, drove her to a wooded area and forced her to have sex with them. He also testified that he had known appellant for fifteen years and knew his mother with whom appellant was then living. During his interrogation of appellant he learned from him that the two stolen cameras were in the top of his closet at his home. Officer Lockett went to appellant's home and told his mother where the cameras were located and she surrendered them to him. Lockett returned the cameras to the prosecutrix and her husband.
Appellant made a motion to suppress both the in-court identification of appellant by the prosecutrix and the out-of-court identification made at the lineup. A voir dire examination was conducted out of the presence and hearing of the jury at which hearing both Officer Ganoe and the prosecutrix testified. The motion to suppress was overruled and denied. At the close of the voir dire hearing Officer Ganoe was recalled to the witness stand. The following exchange occurred between counsel for the defense, the court and the prosecutor:
"Mr. Pennington: No other questions.
 "The Court: Sergeant, we're still going to need you to testify in the presence of the jury.
 "Mr. Pennington: Well, he was going to testify in the presence of the jury on the lineup now anyway; wasn't he? *Page 207 
"Mr. Hanley: Lineup and the . . .
 "Mr. Pennington: We'll just go ahead and put him on, and let him go home.
 "The Court: All right. You have no objection to that procedure, Mr. Pennington?
"Mr. Pennington: No, sir.
"The Court: All right. Bring the jury in.
 "Mr. Hanley: Will you tell the jury that we're interrupting the . . .
"The Court: I'll let you do that, Mr. Hanley.
 "Mr. Hanley: Ladies and gentlemen of the jury, we're going to interrupt Sherry Mason's testimony for a moment. Sergeant Eugene Ganoe is a Detective Sergeant at the Mobile City Police Department, and is now working the midnight shift, eleven to seven. He hasn't had any sleep, and if we wait in order he may not get any sleep; so we're going to put him on and interrupt the testimony with no objection by Mr. Pennington, so we can get Detective Ganoe home to bed."
Sergeant Ganoe went on to testify before the jury to the out-of-court identification by the prosecutrix at the lineup as follows:
 "Q. What did Sherry say when she looked and saw those six men?
 "Mr. Pennington: We object to it, Your Honor, as hearsay.
"Mr. Hanley: That's an exception to hearsay.
"The Court: Overruled.
"Mr. Pennington: We except, Your Honor.
 "A. She walked up to the door, and instead of waiting till they all walked up and looked at him, and then told me if one of 'em was the suspect, she said, `That's them right there, sir.' She pointed out number one.
"Q. She pointed out both Selyn and Ferguson?
"A. Yes, sir."
Appellant contends the trial court erred in allowing Sergeant Ganoe to testify before the prosecutrix completed her testimony and before she identified appellant as one of the men who raped her. The record reflects that the testimony of the victim was interrupted just before she made an in-court identification so that appellant's counsel could take the victim and Sergeant Ganoe on voir dire examination out of the presence and hearing of the jury relative to the motion to suppress the identification. The motion to suppress the identification was denied. Then the issue of the admissibility of appellant's confession was taken up outside the presence of the jury. The court ruled that the confession was freely, voluntarily and knowingly made and was constitutionally admissible into evidence. It was at this point that appellant's counsel suggested that Sergeant Ganoe be called to the witness stand on the lineup identification prior to the victim being recalled to complete her testimony.
Clearly, there was no calculated effort on the part of the state to bolster in advance the victim's in-court identification or her testimony concerning her out-of-court identification of appellant at the lineup, as contended by appellant's counsel.
This issue was decided adversely to appellant's contention by this court in Abercrombie v. State, Ala.Cr.App., 382 So.2d 614, certiorari denied, Ala., 382 So.2d 616, wherein we held:
 "Any review of the law on Alabama evidence must begin with a reference to the works of Judge J. Russell McElroy. In C. Gamble, McElroy's Alabama Evidence, Section 273.01, the rule is stated:
 "`A statement which is useful in identifying a person, time, place or other thing is admissible, for that purpose as a hearsay exception. The statement, of course, may not be considered as evidence of the truth of the matter asserted but only for the limited purpose of identification.'
 "While there is a split of authority on this issue among the different states, the rule above cited is the law of Alabama, Anno. 71 A.L.R.2d 449, at 482-485, 491 (1960). The fact that a third person observed another identify the defendant is `an independent fact to which the witness . . . could testify just as to any other fact.' Key v. State, 240 Ala. 19, 20, 197 So. 364, *Page 208 
(1940), relying on Green v. State, 96 Ala. 29, 11 So. 478, (1891); see also State v. Wilson, 38 Wn.2d 593, 231 P.2d 288, cert. denied, 342 U.S. 855, 72 S.Ct. 81, 96 L.Ed. 644 (1951)."
Sergeant Ganoe's testimony concerning the victim's identification of appellant at the lineup constituted a well recognized exception to the hearsay rule and was properly admitted.
In light of what we have written and adjudicated authorities dealing with the law of Alabama we see no need to further extend this opinion.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.