418 So.2d 921 (1981)
Ben THOMAS
v.
STATE.
5 Div. 601.
Court of Criminal Appeals of Alabama.
December 29, 1981.
On Return to Remand June 29, 1982.
Rehearing Denied August 24, 1982.
Mack Clayton, Alexander City, for appellant.
*922 Charles A. Graddick, Atty. Gen., and William Dudley Motlow, Asst. Atty. Gen., for appellee.
BOWEN, Judge.
The defendant was indicted and convicted for the offense of robbery in the first degree. Sentence was 99 years' imprisonment. Two issues are presented on appeal.

I
The defendant contends that the trial court erred in not charging the jury on the lesser included offenses of robbery in the first degree.
Because the defense was alibi, under the evidence in this case, the defendant was either guilty of robbery in the first degree or nothing at all. Parker v. State, 337 So.2d 1378 (Ala. Cr. App. 1976). The undisputed evidence was that both the robbers were armed with pistols. Under our new criminal code this element of being armed with a deadly weapon or dangerous instrument distinguishes robbery in the first degree from the lesser included offenses of robbery in the second and third degrees. Compare Alabama Code 1975, Sections 13A-8-41, 42 and 43 (Amended 1977). There was no reasonable theory from the evidence supporting the defendant's contention that he was guilty of a lesser included offense because at trial the defendant maintained that he did not commit any offense and the State's evidence made out a prima facie case of robbery in the first degree. Therefore, the request for instructions on lesser included offenses was properly refused for that reason. Chavers v. State, 361 So.2d 1106 (Ala.1978); Cordial v. State, 389 So.2d 170 (Ala.Cr.App.1980).
Defense counsel's objection to the failure of the trial court to instruct the jury was made after the jury had retired to begin their deliberations and was made orally. No written requested instructions on this issue were submitted. The request should have been written. Thigpen v. State, 369 So.2d 291 (Ala.Cr.App.1978); Alabama Code 1975, Section 12-16-13. For this reason also the request for instructions on lesser included offenses was properly refused.

II
The second and more serious contention advanced by the defendant is that the State "threatened" defendant Donald Mitchell and thereby forced Mitchell to refuse to testify in the defendant's behalf.
After the State had rested its case, Donald Mitchell's appointed counsel, John Dillon, made the following statement for the record:
"MR. DILLON: I want the Record to show that I have been present throughout the trial of the co-defendant, Ben Thomas, in this case after having entered a guilty plea or having consented to entering a guilty plea with the understanding to the robbery charge, with the understanding the same defendant, Donald Mitchell, would be allowed to enter a plea of guilty to an associated sodomy charge for which he would receive two concurrent life sentences.
"During the proceedings in this particular case the attorney for the defendant asked me if the co-defendant, Donald Mitchell, would be willing to testify in behalf of this defendant. I said that I did not know but I would be glad to ask him. I have asked him and the State has, through its prosecuting attorney, informed me that in the event that Donald Mitchell testifies in behalf of this particular defendant that their offer is withdrawn and that they intend to pursue Donald Mitchell as a habitual defendant. Donald Mitchell has informed me in somewhat uncertain terms that the present defendant is not the Ben who, whom he had reference to in a statement which he had previously given to the District Attorney, to the State investigators.
"I have advised Donald Mitchell that in view of the actions of the State in stating that they would withdraw their agreement concerning Donald Mitchell in the event that he were to testify that it is in my opinion and Donald Mitchell's best *923 interest that he not testify in the instant proceeding."
Following this, the defendant's counsel stated:
"MR. CLAYTON: Well, your Honor, in light of Mr. Dillon's statement I'd like the Record also to show that it is our opinion that Mr. Mitchell has evidence which is beneficial to the defendant in this case and that he is being coerced and forced not to testify which is prejudicing my defendant."
Donald Mitchell then took the witness stand and, pursuant to his attorney's advice, invoked his privilege against compulsory self-incrimination. The trial court honored Mitchell's privilege. After this, defendant's counsel stated:
"MR. CLAYTON: The defendant objects to the ruling of the Court disallowing the testimony of Donald Mitchell, co-defendant in this cause against Ben Thomas on the ground that his evidence as we expected it to have been would have exonerated the defendant, would have been beneficial to his interests and the failure of the Court to allow this testimony is unduly prejudicial to the defendant and that the defendant was coerced into not testifying by the District Attorney on the ground that he would be prosecuted further should he testify on behalf of the defendant than if he failed to do so."
The Assistant District Attorney made no reply to any of these accusations and contentions except for the following remark:
"MR. GAVIN: Your Honor, I don't know what his testimony would have been. Initially it was the District Attorney's understanding that Donald Mitchell would be a witness for the State and we did not learn until this morning at approximately 9:00 o'clock that he was not going to testify. We did not know for sure before that. We don't know what his testimony would have been one way or the other."
In Cole v. United States, 329 F.2d 437, 443 (9th Cir.), cert. denied, 377 U.S. 954, 84 S.Ct. 1630, 12 L.Ed.2d 497 (1964), it was held:
"We hold the constitutional privilege against self-incrimination is an integral part of the due administration of justice, designed to do and further justice, and to the exercise of which there is an absolute right in every witness. A witness violates no duty to claim it, but one who bribes, coerces, forces or threatens a witness to claim it, or advises with corrupt motive the witness to take it, can and does himself obstruct or influence the due administration of justice."
United States v. Cioffi, 493 F.2d 1111 (2nd Cir.), cert. denied, Cioffi v. United States, 419 U.S. 917, 95 S.Ct. 195, 42 L.Ed.2d 155 (1974). See also Wallace v. State, 27 Ala. App. 545, 176 So. 310, cert. denied, 234 Ala. 544, 176 So. 312 (1946); Alabama Code 1975, Sections 13A-10-123, 124 (Amended 1977).
While the State may properly offer a recommendation of leniency if the defendant will testify for the State and plead guilty, it would constitute a violation of an accused's right of due process of law for the State to threaten a witness for the defendant with prosecution or treatment as an habitual offender if he testified for the accused. This has not been shown to be a case where the witness intends to testify falsely or contradict a statement given the police. Even a witness who has been promised immunity may be prosecuted after giving false testimony. Gipson v. State, 375 So.2d 504 (Ala.Cr.App.1978), affirmed, 375 So.2d 514 (Ala.1979).
We recognize that the privilege of a witness to refuse to incriminate himself is personal to that witness. It cannot be claimed by or for another, including the party by or against whom the witness is called to testify. Warren v. State, 292 Ala. 71, 288 So.2d 826 (1973); Beauvoir Club v. State, 148 Ala. 643, 42 So. 1040 (1907). Yet this case concerns the basic and fundamental right of an accused to a fair trial and reaches the very heart of the judicial truth seeking process and the administration of justice itself.
This cause is remanded to the trial court with directions that a hearing be held *924 to determine whether or not the District Attorney or any of his representatives threatened Donald Mitchell if he testified for the defendant and the circumstances surrounding this alleged threat. The defendant and Donald Mitchell shall be present at such hearing if they so desire. We request that upon completion of all the testimony and evidence, the trial judge make a written finding of fact to be submitted to this Court along with the record of the hearing.
REMANDED WITH DIRECTIONS.
All Judges concur.

ON RETURN TO REMAND
BOWEN, Judge.
We remanded this case for a hearing to determine whether or not the district attorney or any of his representatives threatened Donald Mitchell if he testified for the defendant.
At the hearing, Mitchell testified that "the detective that was on the case" told him that he would be treated as an habitual offender and given life without parole if he testified for the defendant. Mitchell is extremely vague about the law enforcement officer who allegedly threatened him.
"Q. Who is the detective that made this threat?
"A. I, the detective that was on the case. I don't know the name, the detective that was on the case, on the case.
"Q. Do you know if it was the city investigator or state investigator?
"A. They told me it was the state investigator.
"Q. State investigator?
"A. I think that's what they told me."
Mitchell testified that the defendant was not with him the day he robbed the drug store. Immediately before the defendant's trial Mitchell pled guilty to the robbery and the associated sodomy charge pursuant to a plea bargain agreement wherein he would receive two life sentences to run concurrently and not be treated as an habitual offender. Before Mitchell decided whether or not to plead guilty, the prosecutor told him that he "didn't care whether he testified or not."
Any further statement of the facts revealed by the hearing on remand is without purpose. The record fully supports the findings of fact entered by the trial judge. The substance of those detailed findings is found in the judge's conclusions.
"Based on the testimony presented the Court is of the opinion that Donald Mitchell was not threatened or coerced by the State. The Court gives little credence to the testimony of Donald Mitchell for the following reasons:"
* * * * * *
"In the Court's judgment Mitchell was not a believable witness and in the present instance is simply trying to aid his co-defendant, Ben Thomas."
The objection of defense counsel that Mitchell had been threatened and "coerced into not testifying" is supported only by the vague factual assertions of Mitchell himself. The record fully supports the finding of the trial judge. The judgment of the circuit court adjudging the defendant guilty of robbery in the first degree is affirmed.
OPINION EXTENDED; AFFIRMED.
All Judges concur.