TYSON, Judge.
Steve Camron Perry was indicted for the intentional murder of one Horace Junior Goodwin, “by shooting him with a gun”, in violation of § 13A-6-2, Code of Alabama 1975. The jury found the appellant “guilty of murder” and following a sentencing hearing, the trial court fixed punishment at life imprisonment.
Jimmy Johnson testified that in February of 1982 he was employed by the Baldwin County Sheriff’s Department. He stated that at approximately 11:12 p.m. on February 4, 1982, he received a call to go to Patrick’s Landing on the Tensaw River. He stated that when he arrived he found the deceased, Horace Godwin. He stated that he was the first officer at the scene and he proceeded to secure the area and recover evidence. He stated that he recovered a cap, which had Bulldog Mack Truck written on the front of it, from the inside of the houseboat. He further stated that he recovered, from the end of the wharf, a *1001 gray hood with bloodstains on it. He also found some tape which had been used to tie the hands of witnesses to the shooting, and some cartridge cases, one of which was found inside the houseboat. He stated that he turned this evidence over to Investigator Thomas Nunley.
Phyllis Godwin testified that she was the wife of the deceased. She stated that on February 4, 1982, she, Horace, and a few friends decided to go to Patrick’s Landing on the Tensaw River. She stated that she and her husband owned a houseboat which they kept at Patrick’s Landing. She stated that they arrived at the houseboat, at approximately 8:00 p.m., along with Cecil Wilson who rode with them. She said that Tony Godwin, the deceased’s brother, Willard Carter and Kim Josie were already at the houseboat when they arrived.
Mrs. Godwin testified that she and her husband carried approximately 100 Dilau-did pills and more than one pound of marijuana with them to the houseboat. She stated that earlier that afternoon she and her husband had injected some Dilaudid while at their home in Cantonment, Florida. She further stated that after arriving at the houseboat the group drank approximately three or four beers and smoked approximately three “joints” of marijuana.
She testified that at approximately 10:00 p.m., a man knocked on the door to the houseboat and asked for the location of Greer’s Landing. She stated that the man had on a baseball cap, jeans, a T-shirt, and a hooded sweatshirt. She further stated that this man had a mustache and was not very tall. She identified the appellant as the man who came to the door. She also stated that this man left and returned approximately thirty minutes later with another man.
She testified that the two men pushed open the door and both had a pistol in their hand. She said the appellant stated “you know what we’re here for and we’re going to get it” upon gaining entry into the houseboat. She said that the appellant then told his companion to tape everybody up. She stated that the man taped the hands of Tony, Cecil, and Willard. She stated that during this time Horace was trying to talk the men out of doing this act. She further stated that the men took the Dilaudid pills out of her purse. At this point she said the appellant told his companion to tape Horace’s hands, but Horace would not let him do so. She said Horace tried to grab the guns from the appellant, they struggled for a moment, and appellant’s companion told him to shoot Horace. She stated that the appellant pushed Horace to the floor and shot him. She stated that the men ran out the door and Horace jumped up and ran after them. She stated that Horace caught the men at the end of the pier and was then shot again. She stated that the men then entered a small white car and drove away. She then went and called an ambulance. She stated that they were going to take Horace to the hospital, but the tires on both pickup trucks were slashed and the keys missing.
Mrs. Godwin further testified that she identified the appellant in a photographic lineup, and later in a live lineup. She also stated that she identified the appellant’s accomplice in another live lineup.
Dr. Leroy Riddick testified that he was a forensic pathologist. He stated that he performed an autopsy on Horace Godwin. He stated that Mr. Godwin died as a result of a gunshot wound to the chest. He testified that a very small amount of Dilaudid was found in Mr. Godwin’s body fluid and no alcohol was present.
Thomas Nunley testified that he was employed as a criminal investigator for the Baldwin County Sheriff’s Department. He stated that he was called to the scene of the shooting on February 4, 1982, and while there, Deputy Johnson turned over to him evidence which was found there. He stated that he took this evidence to the lab in Mobile, Alabama.
Officer Nunley testified that on February 6, 1982, he took Willard Carter and Tony Godwin to the Pritchard Police Department to view some mug books. He stated that both of these men picked the appellant’s picture out of the books as be *1002 ing the man who shot Horace Godwin. He stated that until this time there was no suspect in the case. He stated that he subsequently went to the appellant’s home, recognized him from the picture Mr. Carter and Mr. Godwin picked out, and immediately read his Miranda rights to him. He said the appellant was then taken to the Mobile Police Department. He stated that the appellant was placed in a lineup and that both Mr. Carter and Mr. Godwin, at different times, identified him as the man who shot Horace Godwin. He said the appellant was then advised that he had been identified and was arrested. He further stated that the appellant agreed to be placed in the lineup.
Walter Crook testified that he was employed as a detective for the Baldwin County Sheriffs Department. He stated that on February 6, 1982, he conducted a photographic lineup with Kim Josie and Mrs. Godwin. Both women identified the appellant as the man who shot Horace Godwin. He further stated that he conducted another photographic lineup on February 8,1982, with Cecil Wilson. He stated that Mr. Wilson identified the appellant as the man who shot Horace Godwin.
Tony Godwin testified that he was the brother of Horace Godwin and that he was at Patrick’s Landing on February 4, 1982, when his brother was shot. He stated that the appellant came to the houseboat at approximately 10:15 p.m., asking for directions to Greer’s Campgrounds. He stated that the appellant returned with another man at approximately 10:45 p.m. He stated that the appellant and his companion entered the houseboat without knocking and that each of the men had a gun. He stated that the appellant’s companion taped him up and made him lie on the floor. He stated that the man then taped the hands of Cecil Wilson and Willard Carter.
Mr. Godwin testified that the men started going through Mrs. Godwin’s purse. He said that the appellant then told his companion to tape Horace up but Horace would not let him do so. He stated there was a struggle, the appellant’s companion said to “shoot him,” and the appellant did. He said the men ran out the door and he heard another gunshot. He stated that by the time he got outside the men were driving away in a car and his brother was lying on the wharf.
Cecil Wilson, Willard Carter, and Kim Josie all testified and they told essentially the same story about the shooting as did Tony Godwin.
The appellant did not testify in this case, however, he offered a number of alibi witnesses. These witnesses testified in essence that the appellant was at home on February 4, 1982, from 6:30 p.m. until after 10:30 p.m.
I
The appellant contends that the trial court erred in refusing his written requested charges on lesser included offenses. Specifically, the appellant argues that the State presented evidence from which the jury could find a lesser verdict than murder. He contends that his request for charges on manslaughter and criminal negligent homicide should have been granted. We disagree.
A charge on a lesser included offense should not be given when there is no reasonable theory from the evidence to support such a proposition. When the evidence clearly shows the appellant is either guilty of the offense charged, or innocent, the charge on a lesser included offense is not necessary or proper. Daly v. State, 442 So.2d 143 (Ala.Crim.App.1983); Phelps v. State, 435 So.2d 158 (Ala.Crim.App. 1983); Gwin v. State, 425 So.2d 500 (Ala. Crim.App.1982), writ quashed, 425 So.2d 510 (Ala.1983); Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982); Cooper v. State, 364 So.2d 382 (Ala.Crim. App.), cert. denied, 364 So.2d 388 (Ala. 1978). “A defendant is likewise not entitled to charges on lesser included offenses when he denied committing the crime itself.” Daly v. State, supra; Wesley v. State, 424 So.2d 648 (Ala.Crim.App.1982); Williams v. State, 377 So.2d 634 (Ala.Crim. *1003 App.), cert. denied, 377 So.2d 639 (Ala.1979); Parker v. State, 337 So.2d 1378 (Ala.Crim.App.1976). Further, a court may properly refuse to charge on lesser included offenses when it is “clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense.” Phelps v. State, supra; Wesley v. State, supra; Chavers v. State, 361 So.2d 1106 (Ala.1978).
The State’s evidence made out a pri-ma facie case of an intentional killing and was in no wise refuted by the appellant. The appellant offered only evidence of alibi. The requests for instructions on lesser included offenses were properly refused in absence of any rational basis to support them. Crowe v. State, 435 So.2d 1371 (Ala.Crim.App.1983); Phelps v. State, supra; Thomas v. State, 418 So.2d 921 (Ala.Crim. App.1981); Chavers v. State, supra. From our review of this record, it is clear that the appellant either intentionally murdered the deceased or was innocent of the crime. Therefore, the trial court did not err in refusing the requested charges.
II
The appellant contends that the trial court erred to reversal in denying his motion for a new trial which was based on newly discovered evidence.
In support of his motion for a new trial, appellant called Laura Grant as a witness. She testified that in the early morning hours of February 5, 1982, at approximately 3:30 a.m., she saw the appellant’s alleged accomplice—Mitch King—in the company of the appellant’s brother. She testified that she saw these men in a nightclub in Tillman’s Corner, Alabama. She stated that she had been drinking on this occasion. She further stated that Mitch King was clean shaven on this occasion and that appellant’s brother had a full beard. She also stated that the appellant and his brother resembled one another and that she decided to come forward with this information only after learning of the appellant’s conviction in the case.
During the trial of the case sub judice, the eye witnesses to the crime each testified that the appellant, the short man, was clean shaven except for a mustache. These witnesses also stated that appellant’s accomplice, a tall man, had a full beard and mustache. Mrs. Grant stated at the motion hearing that she did not know where the men had been earlier, nor did she know who they had been with earlier.
To establish his right to a new trial based on newly discovered evidence, the appellant must show the following: (1) that evidence is such as will probably change the result if a new trial is granted; (2) that it has been discovered since trial; (3) that it could not have been discovered before the trial by the exercise of due diligence; (4) that it is material to the issue; and (5) that it is not merely cumulative or impeaching. Bland v. State, 390 So.2d 1098 (Ala.Crim.App.), cert. denied, 390 So.2d 1109 (Ala.1980), cert. denied, 451 U.S. 991, 101 S.Ct. 2332,68 L.Ed.2d 851 (1980); Gilley v. State, 367 So.2d 597 (Ala.Crim.App.1978), cert. denied, 367 So.2d 600 (Ala.1979); Lewis v. State, 367 So.2d 542 (Ala.Crim.App.1978); Taylor v. State, 266 Ala. 618, 97 So.2d 802 (1957). “Although a new trial may be granted on grounds of newly discovered evidence which tends to prove that the crime for which the accused has been convicted was actually committed by another, the awarding of a new trial rests in the sound discretion of the trial court, and depends largely on the credibility of the new evidence.” Peterson v. State, 426 So.2d 494 (Ala.Crim.App.1982); Prince v. State, 356 So.2d 750 (1978), and cases cited therein.
Assessing the credibility of evidence presented at a new trial hearing falls to the trial judge because he is in the best position to evaluate the new evidence in light of all that has gone before. Peterson v. State, supra; Zuck v. State, 57 Ala.App. 15, 325 So.2d 531, cert. denied, 295 Ala. 430, 325 So.2d 539 (1976). Moreover, the decision of the trial court will not be disturbed unless an abuse of discretion can be shown. Ward v. State, 440 So.2d 1227 *1004 (Ala.Crim.App.1983); Peterson v. State, supra; Robinson v. State, 389 So.2d 144 (Ala. Crim.App.), cert. denied, 389 So.2d 151 (Ala.1980); McBryar v. State, 368 So.2d 568 (Ala.Crim.App.), cert. denied, 368 So.2d 575 (Ala.1979); Page v. State, 57 Ala.App. 265, 327 So.2d 760 (1976).
After a thorough review of the evidence presented at the new trial hearing, and the evidence presented during the trial of this cause, we find that the trial court did not abuse its discretion in denying the motion for new trial. The appellant did not establish his right for a new trial based on newly discovered evidence according to the requirements set out in Taylor and Bland.
Ill
The appellant contends that the trial court erred in denying his motion for judgment of acquittal for failure of the State to prove a prima facie case of murder where the indictment alleged the intentional killing of Horace Junior Goodwin, and the proof was that the individual killed was Horace Junior Godwin.
The appellant asserts that such a difference in the spelling of the victim’s name was a material variance between the pleading and proof, and as such it materially affected his substantial rights. To be material, a variance as to the name alleged in the indictment from that proved by the evidence must be such as to be “misleading or substantially injurious to the accused in making his defense, or to expose him to danger of a second trial on the same charge.” Jackson v. State, 412 So.2d 302 (Ala.Crim.App.1982); Rupert v. State, 45 Ala.App. 84, 224 So.2d 921 (1969). “The rule in this state is if the variance in the name be so slight as scarcely to be perceptible such variance is immaterial.” Huddleston v. State, 37 Ala.App. 57, 64 So.2d 90, cert. denied, 258 Ala. 579, 64 So.2d 102 (1953); Aaron v. State, 37 Ala. 106 (1861). We find the above variance in the spelling of the victim's last name to be so trifling that it is inconceivable that appellant could have been misled or prejudiced thereby. See Jackson v. State, supra; Holloman v. State, 349 So.2d 131 (Ala.Crim.App.1977); Westfaul v. State, 56 Ala.App. 519, 323 So.2d 404, cert. denied, 295 Ala. 427, 323 So.2d 406 (1975); Rupert v. State, supra; Helms v. State, 40 Ala.App. 622, 121 So.2d 104, cert. denied, 270 Ala. 603, 121 So.2d 106 (1960); Hollis v. State, 37 Ala.App. 453, 70 So.2d 279 (1954); Huddleston v. State, supra; Aaron v. State, supra.
IV
The appellant’s final contention on appeal is that the trial court erred in allowing Officer Nunley to testify that Willard Carter and Tony Godwin selected the appellant, from a photographic lineup, as the perpetrator of the crime. The appellant argues that such testimony is hearsay, not subject to any exception.
This issue has been decided adversely to appellant’s position by this court in a number of cases. “A statement which is useful in identifying a person, time, place or other thing is admissible, for that purpose as a hearsay exception.” C. Gamble, McElroy’s Alabama Evidence, § 273.01 (3d Ed.1977); Coleman v. State, 443 So.2d 1355 (Ala.Crim.App.1983); Ferguson v. State, 401 So.2d 204 (Ala.Crim.App.), cert. denied, 401 So.2d 208 (Ala.1981). The fact that Officer Nunley observed a third party identify the appellant in a photographic lineup is an independent fact to which he could testify, just as to any other fact. Coleman v. State, supra; Ramsey v. State, 441 So.2d 1065 (Ala.Crim.App.1983); Dent v. State, 423 So.2d 327 (Ala.Crim.App. 1982); Ferguson v. State, supra; Abercrombie v. State, 382 So.2d 614 (Ala.Crim. App.), cert. denied, 382 So.2d 616 (Ala. 1980). Such testimony is an exception to the hearsay rule and limited for the purpose of identification. It may not be considered as evidence of the truth of the matter asserted. Coleman v. State, supra; Ramsey v. State, supra; Franklin v. State, 424 So.2d 1353 (Ala.Crim.App.1982); Dent v. State, supra; Ferguson v. State, supra; Abercrombie v. State, supra.
*1005 We have carefully reviewed the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of the trial court is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.